## Samuel G. Leland and others v. Peter H. Collver and others.

*Chattel mortgages: Goods subsequently acquired.* A chattel mortgage of a
stock of goods, giving the mortgagor authority to sell at retail in the
ordinary course, and which required him to keep up his stock of like
goods to a specified amount as security to the mortgagee, and to keep
the stock insured for his benefit, and was worded to cover, in addition
to the goods therein specifically described, all the stock the mortgagor
should have from time to time in trade, is held valid, in the absence of
any intervening paramount rights of third persons, to authorize the mort-
gagee to seize and subject to sale goods purchased and added to the
stock subsequent to the giving of the mortgage.

*Contracts: Trusts in personal property: Continuing fund.* It is competent
for parties to make contracts of agency, bailment, or other authority, as
broadly as they choose, where no legal policy and no paramount right

intervenes before their enforcement; and trusts in personal property, where the specific property is constantly changing while the fund remains subject to the duties and burdens of the trust, are not uncommon.

*Trusts: Transfers subject to the trust: Purchaser becomes trustee.* This trust or power attaches with like force to the property in the hands of purchasers thereof from the mortgagor subject to the terms and conditions of the trust agreement, as well as to additions made by them to the stock, as it would as between the original parties; every such purchaser becomes in equity a trustee of the fund.

*Mortgages: Double covenant: Breach of either: Defeasance: Right of foreclosure.* Where in such a mortgage the covenants to keep up the stock and to insure are united, and it is provided that "a breach of these two covenants shall cause the whole sum secured to become due and payable," but the defeasance expressly authorizes a foreclosure on a breach of either, it is held, construing the mortgage as a whole, that a double breach is not essential to the right to foreclosure.

*Chattel mortgages: Sales: Consent: Condition: Forfeiture: Waiver.* A ruling that a waiver of the condition, that a sale except at retail without written consent would operate as forfeiture, could not be found unless the jury should find the property was sold with the knowledge and consent of the mortgagees, is held not to be an error of which parties standing in the place of the mortgagor can complain.

*Mortgages: Covenant to insure: Breach: Insurance by mortgagee.* Where there is a covenant to insure in a mortgage, and it is not kept, the mortgagee may very properly insure, and he can add the premium to his debt, if fair and reasonable.

*Husband and wife: Business conducted by husband in the wife's name: Statements: Notice.* Where business is conducted entirely by the husband, but in the name of the wife, the latter will be bound by the statements and conduct of the husband in the course of the business, and notice to the husband is notice to the wife.

*Submitted on briefs June 20. Decided October 4.*

Error to St. Joseph Circuit.

*David Knox, Jr.* and *Upson & Thompson,* for plaintiffs in error, to the point that a chattel mortgage, so far as it attempts to subject after-purchased property of the mortgagor, or his assigns, to its operation, is void and creates no lien on such property and gives no authority to the mortgagee to seize and sell the same, and that a mortgage, like a sale, requires a subject *in esse* and in the power of the mortgagor, cited: *2 Hill on Mort., 337,* §§ *16–24; Jones v. Richardson, 10 Met., 481; Edgell v. Hart, 9 N. Y., 217; Mogg v. Baker, 3 M. & W., 195; Gale v. Burnell, 7 A. & E. (N. S.), 850; Single v. Phelps, 20 Wis., 419; Tucker v. Alger, 30 Mich., 67; Gay v. Bidwell, 7 Mich., 521;* that a mortgage of the

whole of the mortgagor's stock now in his possession, and also such additions thereto as he may thereafter make from time to time, conveys only the stock on hand at the date of the mortgage: *Wagner v. Watts*, 2 *Cranch C. C.*, 169; *In re Kahley*, 2 *Biss.*, 383; *Winslow v. Merchants' Ins. Co.*, 4 *Met.*, 306; *Moody v. Wright*, 13 *Met.*, 17; *Barnard v. Eaton*, 2 *Cush.*, 303; *Gardner v. McEwen*, 19 *N. Y.*, 123; *Lunn v. Thornton*, 1 *M. G. & S.*, 379; *Mowry v. White*, 21 *Wis.*, 417; that the mortgage in question was void for uncertainty: *Collins v. Myers*, 16 *Ohio*, 547; *Gay v. Bidwell*, 7 *Mich.*, 522; *Blakely v. Patrick*, 67 *N. C.*, 40; *Matter of Manly*, 2 *Bond*, 261; that a stipulation that subsequently acquired property should be subject to the same lien would be an executory agreement only, and would not bind after-acquired property until actually executed by a new mortgage given after its purchase: *Codman v. Freeman*, 3 *Cush.*, 309; *Jones v. Richardson*, 10 *Met.*, 481; that the statements of Moore should not have been received in evidence as binding his wife: *People v. Olmstead*, 30 *Mich.*, 435; *Horner v. Fellows*, 1 *Doug.*, 51; *Converse v. Blumerich*, 14 *Mich.*, 109; *Thomas v. Harding*, 8 *Greenl.*, 417; *Anderson v. Rome, etc., R. R. Co.*, 54 *N. Y.*, 334; that the admission in evidence of the contracts of mesne purchasers from the mortgagor, whereby they assumed and agreed to pay the mortgage, was erroneous; since they only created a personal liability, and not a lien on the property, and especially not a new and independent lien on the stock of any new contracting party as to additions made by him or his assigns: *Moody v. Wright*, 13 *Met.*, 32; *Codman v. Freeman*, 3 *Cush.*, 306; *Otis v. Sill*, 8 *Barb.*, 102; *Rhine v. Phelps*, 3 *Gilm.*, 455; *Gale v. Burnell, ubi supra.*

*R. R. Pealer* and *H. H. Riley*, for defendants in error, as to the validity of the mortgage to authorize the seizure and sale of after-acquired goods, no paramount rights

intervening, cited: *7 Mich.*, *519; 2 Cush.*, *294; 3 Met.*, *518; 11 Ib.*, *333; 20 Me.*, *408; 40 Ib.*, *561; 42 Ib.*, *132;· 20 Ia.*, *399; Alb. L. J.*, *May 20, 1876, p. 341; Cent. L. J.*, *May 5, 1876, p. 286;* that a person buying subject to a mortgage is in no position to dispute its validity: *Webb v. Mann, 3 Mich.*, *142;* that the mortgage contained no illegal provision, not reconcilable with an honest intent, and was therefore not void on its face: *7 Mich.*, *108;* and was operative, as between the parties, to convey the property subsequently acquired: *7 Mich.*, *522;* and that under the condition the ·goods could be sold before the mortgage became due: *29 Barb.*, *518; 6 Abb. N. Y. Dig.;* that the plaintiffs, taking subject to and with notice of the mortgage, have no greater rights than the mortgagor: *2 Story*, *630; 2 Johns.*, *229.*

CAMPBELL, J:

Plaintiffs in error sued defendants in error in trover for the conversion of certain furniture which had been the stock in trade of plaintiffs. Defendants justified under a chattel mortgage, the terms of which are important as presenting most of the questions in ' controversy.

This mortgage, dated July 3, 1870, was made by Emanuel Shnyder to defendants Illenden & Collver to secure two thousand dollars and interest at ten per cent. annually, one thousand in two years and one thousand in three years from date. It was given for the purchase money of the stock of goods mentioned in it. The property mortgaged was set forth in these terms, with the conditions appended:

"All the goods, wares, and merchandise, chattels and effects mentioned and described in the schedule hereto annexed and marked 'Schedule A,' this day bought of Illenden & Collver, thereby intending to convey all the present stock in trade as enumerated in said schedule; also all the stock I may have from time to time in trade as security

for the above named consideration, said goods to remain and continue in the possession of the party of the first part, in the village of Three Rivers, Michigan, except as they are disposed of in the usual course of retail trade; the party of the first part is to have the privilege of selling the goods for cash or on credit in the usual course of trade, and is to apply the proceeds of the sales in buying other goods to keep up the stock and to the support of his family.· The party of the first part covenants to keep up a stock of like goods to the value of three thousand dollars as security to the parties of the second part until the above amount, with interest, is paid, and also covenants to keep the stock insured to the amount of two thousand dollars for the benefit of the party of the second part and as collateral thereto, and a· breach of the last two covenants shall cause the whole sum secured to become due and payable."

In addition to the usual conditions of defeasance, the mortgage contained the following as among the acts which would authorize a seizure and sale : "If the said party of the first part shall sell, assign or dispose of, or attempt to sell, assign, or dispose of the said goods and chattels contrary to the terms of these presents, or remove or attempt to remove the whole or any part thereof from the said village of Three . Rivers without the written assent of the party of the second part, or if the insurance is not kept up, or if the stock is sold below the amount covenanted to be kept up, then and from thenceforth it shall and may be lawful for the said party of the second part," etc., to enter, etc.

The undisputed facts are that Shnyder, after making this mortgage, continued ‚in business alone, and in partnership with others, until August 30, 1871, when he sold out his interest in the firm of Shnyder & Bellows to one John Koahn, who in a short time bought out Bellows also, and continued in business alone until on the 11th of November, 1871, he sold out his stock to the plaintiff Nancy Moore, giving an inventory which was declared to be "subject to a

chattel mortgage." There was no other chattel mortgage than the one in question. The other plaintiffs became partners with Nancy Moore, and during their continuance in business they added three hundred and forty-four dollars worth of goods purchased from other parties, and sold about one thousand five hundred dollars worth at retail. Illenden and Collver seized the stock under their chattel mortgage on the 22d of February, 1872, and sold it. The property sold included some recent purchases and unfinished articles. But a small part of the property was in that originally sold by Illenden. & Collver to Shnyder. Alfred B. Moore, husband of Nancy Moore, acted for her in making her original purchase, and in superintending all her business, in which she did not act personally for herself at all.

All the persons who became interested in the stock of goods took with notice of the chattel mortgage, and bought subject to it.

The principal question, which is presented under many forms, is, whether Illenden & Collver had a right under the chattel mortgage to seize and sell the property not originally in their possession and within their sale to Shnyder, for the purchase price whereof the security was given.

It is not insisted by defendants in error as matter of law that the mortgage became operative as a present conveyance upon each successive addition to the stock in trade as soon as purchased. The claim, as we understand it, is, that it gave the mortgagees authority to seize and subject such property to sale, and to make good title under such power, unless prevented by the paramount right of some person intervening with a valid claim or title created prior to such seizure.

Some question appears to have arisen concerning the effect of a confusion of goods by intermixture. It would be difficult to create such a confusion among such articles as those in controversy, and it does not appear in fact that any serious difficulty was found in distinguishing the property.

The questions, in our judgment, need not be considered in that point of view. But as the legal propositions themselves are somewhat intermingled, they can be more satisfactorily disposed of together than separately.

It was held in *Holmes v. Hall, 8 Mich. R., 66*, that an agreement whereby a creditor was authorized in a future contingency to take possession of a stock of goods and sell them, but which contained no terms of transfer or hypothecation, was not a mortgage, but was only a beneficial power, which could not fix any rights in the property before seizure. A similar doctrine was held in *Dalton v. Laudahn, 27 Mich. R., 529*, where the power was contained in a lease. But it was further held in the latter case that the agreement was valid and operative according to its terms, and no good reason occurs to us, and we think there is no satisfactory authority why it should not be. Parties can, if they choose, make contracts of agency, bailment, or other authority, as broadly as they choose, where no legal policy and no paramount right intervenes before their enforcement. And if those agreements contain a license or permission to take possession and sell, no court can deny the validity of the possession and sale, if the parties are capable of contracting and no other rights intervene.

Cases are not rare in which tenants of lands have been compelled to perform their stipulations to leave certain live stock or other property on the estate at the end of their leases. And trusts in personal property are of every day occurrence, in which the specific property is constantly changing, while the fund remains subject to the duties and burdens of the trust. Partnership operations are notable instances of this kind.

The present mortgage is one where the parties both agreed that the primary fund should be kept good by successive sales and re-investments, which it is evident was necessary, in the first place to enable Shnyder to pay for his goods, and in the second place to make Illenden & Collver secure by replacing what had been sold. The agreement was fair and

intelligible, and it is as easy to identify this fund as any other which changes its shape but not its legal identity by re-investment.

If the mortgage had not authorized sales, and the property had been sold notwithstanding, a court of equity would find no difficulty in pursuing the trust fund, so long as it could be identified, into the property wherein it had become re-invested, and it pursues this course because the new property is regarded as belonging to the trust as effectually as the old. And this pursuit of trust funds is not confined in all cases to the possession of the original wrong-doer. Persons taking with notice are in the same position in a large class of cases.

In the present case the parties have seen fit to stipulate expressly that the body of the fund may be changed without losing its identity, and that the mortgagee may deal with it as if unchanged. The various purchasers have made their purchases subject to this arrangement, and are estopped from denying it. The mortgagees in taking the property did only what Shnyder agreed they might do, and what the several purchasers also understood they were authorized to do.

A purchase of property subject to such a power would certainly be regarded in equity as liable to be subjected to a disposition in furtherance of the trust. Every one taking it on those terms becomes in equity a trustee of the fund. And where the contract itself points out the way for the enforcement of rights by act of the party, and he has only done what it was agreed he might do, it would be unjust and absurd to hold him responsible as a wrong-doer, as against those who were bound by the terms of their own holdings to allow him to do it.

If the additions to the stock made by the later purchasers had exceeded in value the amount of sales from the stock, there might possibly be some difficulties which do not exist here. But the sales largely exceed the additions.

For any sale beyond such articles as raised the amount

31 MICH.—54.

of the mortgage with interest and expenses, the mortgagees were liable.     But this the court distinctly charged, and we find nothing to indicate that this point was not fairly placed before the jury.     They were expressly told that the sale of a single article after the requisite sum had been raised would be unauthorized.

Some questions were raised concerning the right to foreclose before the maturity of the mortgage.     It is claimed that under the terms of the mortgage it did not all become due on the failure to insure alone, or on the reduction of the stock alone below three thousand dollars.     This, we think, is not so.     It is true that in the early part of the mortgage the covenants to insure and to keep up stock are united, and it is said "a breach of the last two covenants shall cause the whole sum secured to become due and payable."     Assuming what we very much doubt, that this by itself technically requires a double breach, yet it must be read with the rest of the mortgage.     In the proviso or defeasance, where it is proper to look for the careful statement of the mortgagee's rights, there is no ambiguity.     The remedy is expressly given on a breach of either one of the two conditions.

We also think there was no error in the instructions given concerning what would amount to a waiver of the condition that a sale, except at retail, without written consent, would operate as a forfeiture.     The court told the jury that the condition might be waived, but that they could not find such a waiver unless they found the property was sold with the knowledge and consent of the mortgagees. This was certainly going as far as could be asked.     If the jury have not taken a proper view of the testimony their course cannot be reviewed in this court.     Their finding has not been disapproved by the court below, and we may fairly presume it was justified.

The objection to evidence of the insurance of the property by the mortgagees for their own protection is not well

taken. Where there is a covenant to insure and it is not kept, the mortgagee may very properly insure, and can add the premium to his debt, if fair and reasonable.

Objection was also made to the reception of testimony of certain remarks of A. B. Moore, the husband of Nancy Moore, the plaintiff, as not *res gestæ*, and therefore incompetent. One of these was a declaration made about the time of the removal of the goods to his wife's store, that he had got a whip row on Illenden & Collver, and intended to keep it. The other was, that the mortgage was worthless, and he was going to beat them out of the mortgage if he could.

The evidence showed, or tended to show, that in the transaction of the business of Mrs. Moore she was practically a cypher, and that Moore had entire control and did as he chose. If this testimony had any materiality at all, it was to show notice of the defendant's rights, or such conduct as would justify them in proceeding to an enforcement of them. In both these particulars it was admissible under such circumstances to urge and to assume that she knew what he knew and intended what he intended, and perhaps, still further, to urge that she was merely a figure head and her husband the actual dealer. Where husband and wife are engaged in business on such terms we should not be authorized to find error in the admission of proof of his conduct and statements unless evidently foreign to the issue and to his authority, and plainly prejudicial in its tendency to the rights of the parties. We are unable to see how it could prejudice any one except on grounds which made it legally admissible as conduct which it was material to show.

We find no error in the record, and the judgment must be affirmed, with costs.

The other Justices concurred.