## PEOPLE v. RIKER.

1. INTOXICATING LIQUORS—CRIMINAL LAW—LOCAL OPTION LAW —TRIAL—CROSS-EXAMINATION.

   In a prosecution for violation of the local option law, *held,* that the trial judge was sufficiently liberal in permitting full inquiry, on cross-examination of the main witness for the prosecution, as to matters affecting her credibility.

2. TRIAL—CONDUCT OF COURT.

   Where there was much acrimony in the trial, neither side being blameless, rendering it necessary for the trial judge to speak quite plainly and positively, *held,* no prejudicial error in his so doing.

3. SAME—CRIMINAL LAW — ARGUMENT OF COUNSEL — OPINION OF PROSECUTOR—APPEAL AND ERROR.

   Where the prosecuting attorney, in his argument to the jury, made the statement that he thought the prosecution's main witness told the truth, and, on objection by defendant's counsel, the court stated that the prosecutor had no

right to give his opinion as to the truth or falsity of the testimony, and no request was made to instruct the jury further on the subject, *held*, not reversible error.

4. SAME—INSTRUCTIONS—PRESUMPTION OF INNOCENCE.

An instruction by the court that "Every person charged with an offense is presumed to be innocent until they are proven guilty beyond a reasonable doubt, and that presumption of innocence attends such person all the way through the trial and up until such time as you find beyond a reasonable doubt he is guilty as charged, and when that time comes then the presumption ends," *held*, to be equivalent to an instruction that the person charged is presumed to be innocent until it is established by competent and satisfactory evidence that he is guilty beyond a reasonable doubt.

5. SAME—INSTRUCTIONS.

An instruction by the trial court that the jury would not be justified in discarding the testimony of a witness if such testimony was corroborated by the testimony of other witnesses whose testimony was believed by them beyond any reasonable doubt, and that this would be true of the testimony of "each and every witness sworn in the case upon any material issue," *held*, not erroneous.

Error to Genesee; Stevens, J. Submitted April 12, 1918. (Docket No. 125.) Decided July 18, 1918.

Aaral A. Riker was convicted of violating the local option law, and sentenced to pay a fine of $150 and to imprisonment for 120 days in the Detroit house of correction. Affirmed.

*James S. Parker*, for appellant.

*Roy E. Brownell*, Prosecuting Attorney, and *H. B. Freeman*, Assistant Prosecuting Attorney, for the people.

Defendant was convicted of violating the local option law (2 Comp. Laws 1915, § 7080 *et seq.*). Sentence having been pronounced, he brings the case here by writ of error. He conducted a grocery and drug

store in the city of Flint where the local option law was in force. The illegal sale is claimed to have occurred on February 16, 1917. In view of some of the questions raised it becomes necessary to set forth somewhat in detail the respective claims in the case. On the day in question Mrs. Isabella Siegel, who was married to a farmer living near Flint, went to the police headquarters in that city. The Siegels had traded some at defendant's store and it is apparent from this record that she had concluded that Mr. Siegel was obtaining liquor there, and that she desired and had planned to obtain evidence against Mr. Riker. She had written and brought with her a note purporting to be written and signed by Mr. Siegel stating that he was ill and wanted a pint of whisky and some quinine. She was searched at police headquarters and had no whisky with or upon her. Two officers accompanied her to defendant's store but did not go in with her. She carried a muff and walked between the two officers. They both testify she did not remove her hands from the muff and had no opportunity to get the whisky on the way to the store. Another officer—a plain clothes man—had shortly before that entered the store for the ostensible purpose of purchasing some writing paper and was there when Mrs. Siegel came in and remained until she left. Mrs. Siegel testifies that she gave defendant the note above referred to, together with a one dollar bill and told him she wanted a pint of whisky and twenty-five cents worth of quinine; that this conversation occurred at the office in the store; that defendant gave her the quinine, went to the back part of the store, got a pint of whisky which he also gave to her; that by prearrangement she dropped the bottle containing the whisky on the show case to attract the attention of the officer in the store, put the whisky and quinine in her muff, the officer opened the door and they left the store together. She

returned to police headquarters accompanied by two officers as before and there left the whisky and quinine which were produced on the trial.

The defendant denies the sale of the liquor. He testifies, and in this he is corroborated by his lady bookkeeper, that upon receiving this note he informed Mrs. Siegel that she must have a prescription to get the whisky. He says he gave her the quinine and the change for the dollar bill. He also testifies and in this he is corroborated by employees in the store, that shortly before noon Mrs. Siegel came into the store and asked permission to leave a package there, and, receiving permission, left a small package near the office.

FELLOWS, J. (*after stating the facts*). It was the claim of defendant that Mrs. Siegel's marriage to Mr. Siegel was an unlawful one, that she had at that time a husband living, that untruthful statements were made in the affidavit for the marriage license and that her former life had not been above reproach. Defendant's counsel insist that the cross-examination of this witness upon these questions was unduly limited by the court. It is true, as insisted by counsel, that upon cross-examination, within reasonable limits, a witness may be very thoroughly sifted to develop his antecedents—his true character, for the purpose of affecting his credibility as a witness, and to enable the jury to properly weigh and measure that credibility. *Wilbur* v. *Flood*, 16 Mich. 40; but a careful reading of the cross-examination of this witness covering some 24 pages of the record, most of which was devoted to her past life, satisfies us that the trial court was sufficiently liberal in permitting full inquiry as to the matters affecting her credibility, and that defendant was not hampered to his prejudice in the conduct of such examination.

Nor are we persuaded, from an examination of the entire record, that it shows, as claimed by defendant, such antagonistic and prejudicial conduct on the part of the presiding judge as prevented a fair trial of the defendant. The position of the presiding judge was a most trying one. The case bristles with acrimony which we are unable to discover substantial foundation for. Neither side can be entirely absolved for this condition. The trial judge in an attempt to preserve an orderly conduct of the trial at times found it necessary to speak quite plainly and positively. We discover no prejudicial error in his so doing.

Error is assigned upon the statement made by the prosecuting attorney in his argument to the jury, to the effect that he thought Mrs. Siegel told the truth while on the witness stand, and it is insisted that this was tantamount to saying he believed the defendant was guilty. Upon objection being made the prosecuting attorney promptly told the jury that they were not to follow what he thought, that they were not to be guided in any way by what he thought. When defendant's counsel, Mr. Snow, objected to the remarks of the prosecuting attorney, the court at once stated:

"What Mr. Snow means is this: the prosecuting attorney in those cases has no right to give his opinion as to the testimony, the truth of it or the falsity."

We do not find that the court was requested to instruct the jury further on the subject. Within our holdings in *People* v. *Hess,* 85 Mich. 128; *People* v. *Ponsford,* 181 Mich. 659, and other cases, we should not reverse this case upon this assignment of error.

Error is assigned on the following instruction given by the court:

"Every person charged with an offense is presumed to be innocent until they are proven guilty beyond a reasonable doubt, and that presumption of innocence attends such person all the way through the trial and

up until such time as you find beyond a reasonable doubt he is guilty as charged, and when that time comes then the presumption ends."

It is urged that this instruction permitted the jury to convict upon gossip, prejudice or anything in or out of the case and did not require the jury to be convinced by the evidence in the case. *People* v. *Mc-Clintic*, 193 Mich. 589, is cited to support this contention. In that case the infirmity in the charge consisted in the instruction that the presumption of innocence obtained "until the people, through the prosecuting attorney, have convinced" the jury of defendant's guilt. This court there held that such instruction was not the equivalent of saying that the presumption of innocence continued until overcome by evidence which convinced the jury beyond a reasonable doubt of defendant's guilt. But defendant in the instant case overlooks the fact that in the language complained of here the word "proven" is used. In the first section of Greenleaf on Evidence it is said: "Things established by competent and satisfactory evidence are said to be proved." The instruction in the instant case, then, must be regarded as the equivalent of an instruction that a person charged with an offense is presumed to be innocent until it is established by competent and satisfactory evidence that he is guilty beyond a reasonable doubt. The instant case is further distinguishable from the *McClintic Case* in the fact that in the *McClintic Case* specific instructions were preferred, while in the instant case none were, so far as the record discloses. See *People* v. *Rogulski*, 181 Mich. 481.

The trial court also charged the jury:

"If in this case you find beyond a reasonable doubt that the testimony of Mrs. Siegel as to the purchase of the liquor is corroborated by the testimony of other witnesses as to all the facts and circumstances, and you

believe the testimony of these witnesses to be true, you have no right, nor can you discard the testimony of Mrs. Siegel as being false. Now, understand that. If you find beyond a reasonable doubt that the testimony of Mrs. Siegel is corroborated by the testimony of other witnesses, which testimony you believe to be true, then you cannot discard her testimony as being false and this same rule applies to each and every witness sworn in the case upon any material issue, no matter in whose behalf they were testifying."

"Corroborate" is defined in Black's Law Dictionary (2d Ed.), p. 277: "To strengthen; to add weight or credibility to a thing by additional and confirming facts or evidence." See, also, *Still* v. *State,* (Tex. Crim. App.), 50 S. W. 355; *State* v. *Hicks,* 6 S. D. 325; *State* v. *Guild,* 10 N. J. Law, 163.

If Mrs. Siegel's testimony as to all the facts and circumstances was strengthened, confirmed, and corroborated by the testimony of other witnesses, whose testimony was believed by the jury beyond any reasonable doubt, then all the facts and circumstances were proven beyond a reasonable doubt, and under such circumstances the jury would not be justified in discarding the testimony of a witness who had testified to such facts and circumstances so proved. But the trial court also stated that this would be true of the testimony of "each and every witness sworn in the case upon any material issue." We are not persuaded that this instruction was erroneous as applied to the facts of the instant case. We have examined the other errors assigned and find them without merit.

The conviction is affirmed.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, BROOKE, STONE, and KUHN, JJ., concurred.