BROOKS *v.* GILLOW.

DOROW *v.* SAME.

1. FRAUDS, STATUTE OF—PURPOSE OF STATUTE.

    The statute of frauds exists in the law for the purpose of pre-
    venting fraud and the opportunity for fraud (CL 1948,
    § 566.106).

2. SAME—VENDOR'S INTEREST IN LAND CONTRACT—ASSIGNMENT.

    A vendor's interest in a land contract is an interest in real estate
    and the conveyance, transfer or assignment thereof is required
    by the statute of frauds to be in writing (CL 1948, § 566.106).

3. GIFTS—ORAL INTER VIVOS GIFT—VENDOR'S INTEREST IN LAND
   CONTRACT—STATUTE OF FRAUDS.

    A vendor's interest in a land contract cannot be the subject of
    an oral gift *inter vivos* since it is an interest in real estate
    which the statute of frauds requires to be in writing (CL
    1948, § 566.106).

4. SAME—CAUSA MORTIS.

    A gift *causa mortis* is a gift of personal property made by a
    person in the expectation of imminent death, on the condition
    that the donor dies as anticipated, leaving the donee surviving
    him.

5. SAME — ELEMENTS — INTENT — DELIVERY — ACCEPTANCE — PRE-
   SUMPTIONS.

    To constitute a valid gift the donor must possess the intent to
    gratuitously pass title to the donee, an actual or constructive

REFERENCES FOR POINTS IN HEADNOTES

[2] 49 Am Jur, Statute of Frauds §§ 154, 168.
[3] 49 Am Jur, Statute of Frauds § 149 *et seq.*
[4] 24 Am Jur, Gifts § 4 *et seq.*
[5] 24 Am Jur, Gifts § 20 *et seq.*
[6] 49 Am Jur. Statute of Frauds § 149.
[7] 54 Am Jur, Trusts § 40.
[8] 54 Am Jur, Trusts §§ 37–39.
[9] 54 Am Jur, Trusts §§ 17, 18.

delivery must be made and the donee must accept it, although a gift beneficial to the donee will be presumed to have been accepted.

6. SAME—CAUSA MORTIS—VENDOR'S INTEREST IN LAND CONTRACT—ASSIGNMENT.

Plaintiff, claiming that the vendor's interest in a land contract had been given to her by deceased, *held*, to have failed to prove a gift *causa mortis*, since the subject matter was an interest in land and not personalty, and no written assignment or conveyance thereof was claimed to have been made by deceased (CL 1948, § 566.106).

7. TRUSTS—FORM.

The law requires no particular form of words to create a trust.

8. SAME—ADMINISTRATION.

The substantial terms of the trust itself must be established in such a manner that courts can describe the responsibilities and duties of·those by whom the trust must be administered.

9. SAME—EQUITABLE TRUST—EVIDENCE.

Written instruments by which it is claimed deceased set up a trust as to vendor's interest in land contract *held*, so ambiguous as to make it difficult to ascertain the settlor's true intent and almost impossible to draft a decree in accordance with the wishes of the supposed settlor, hence the doctrine of equitable trusts may not be applied.

Appeal from Wayne; Hadsell (Philip A.), J., presiding. Submitted January 7, 1958. (Docket Nos. 3, 4, Calendar Nos. 47,354, 47,355.) Decided April 14, 1958.

Bill by Gladys Brooks against Everett Gillow, Nellie Reynolds, Marian Gardner, David Gillow and D. Neil Reid, administrator with the will annexed of the estate of Edna M. Gillow, deceased, to have declared as a gift *inter vivos* an oral assignment of vendor's interest in a land contract.

Bill by Mary Ann Dorow against the same defendants to have declared as a gift *causa mortis* in trust certain writings relating to vendor's interest in a land contract.

Cases heard together on trial and appeal. Bills dismissed. Plaintiffs appeal. Affirmed.

*David F. Fitzgerald,* for plaintiffs.

*Butzel, Eaman, Long, Gust & Kennedy,* for defendants Everett Gillow and Nellie Reynolds.

*Reid & Gilmore,* for defendants Marian Gardner, David Gillow and D. Neil Reid, administrator.

KAVANAGH, J.    These 2 cases were consolidated for trial in the court below, tried together and disposed of together despite the fact that a number of issues in each case are different and the theory of plaintiff in each case is different. I believe that it is necessary to understand the particular questions involved to make separate statements of fact, and will therefore treat the case of Brooks *v.* Gillow, first and follow with Dorow *v.* Gillow.

In the Brooks case the plaintiff and appellant is a niece of Edna M. Gillow, deceased. It is her claim that the deceased several weeks prior to her death made a valid gift *inter vivos* to her of deceased's vendor's interest in a certain land contract. The defendants and appellees, with the exception of Mr. Reid, are stepchildren of the deceased and children of Mrs. Gillow's husband, who predeceased her. Mr. Reid is the duly-appointed and acting administrator of the decedent's estate. Under the decedent's will, duly admitted to probate, her estate, including the land contract in question, was subject to distribution to the defendants and appellees as devisees and legatees of the decedent.

Plaintiff commenced her chancery action to enjoin distribution as it related to the land contract and asked for a decree that the land contract belonged to plaintiff by reason of a gift *inter vivos.*

Plaintiff claims that on or about September 11, 1953, a few days prior to deceased's entering the hospital for treatment of an incurable disease, said deceased, in the presence of a witness who testified in this case, gave said contract, in which she had a vendor's interest, to plaintiff; that plaintiff accepted the contract and kept it in her possession, making 2 monthly collections of the payments thereunder. Plaintiff further contends that on or about November 28, 1953, D. Neil Reid, who had been appointed special guardian of Mrs. Gillow, demanded of plaintiff the contract and the money collected thereon. Plaintiff then informed the special guardian of the gift of the deceased. However, plaintiff was advised by the special guardian, who, incidentally, is an attorney, that she could not claim it as a gift without a written assignment, whereupon, plaintiff relying upon his statement, delivered the contract and the payments, less some expenses from the payments she had made on behalf of deceased to D. Neil Reid. Subsequently Mrs. Gillow died and Mr. Reid was appointed administrator of deceased's estate.

Plaintiff claims that the delivery of the land contract to her, of which deceased was the vendor, together with her acceptance thereof, constituted a gift *inter vivos,* the interest of the vendor being personal property and therefore the proper subject of such a gift.

Defendants contend that a vendor's interest in a land contract is an estate or interest in lands and is therefore subject to the statute of frauds;* that any transfer of said interest must be in writing and subscribed by the party assigning it.

Plaintiff contends that upon the execution of the land contract, the interest of Edna M. Gillow as vendor thereunder was converted to personalty, un-

* See CL 1948, § 566.106 (Stat Ann 1953 Rev § 26.906).—Reporter.

der the doctrine of equitable conversion, and that as long as the contract was in force, the said vendor's interest was considered as personalty and was no longer subject to the statute of frauds, and was a subject to gift *inter vivos* as personalty.

The doctrine of equitable conversion has been followed in the State of Michigan, and our Court has recognized it in a number of cases and has held the interest of a vendor in a land contract to be personalty. In *Detroit & Security Trust Co.* v. *Kramer,* 247 Mich 468, the Court on page 470 says:

"In certain cases we have held that after sale of real estate upon executory contracts, under the equitable doctrine of conversion, the interest of the vendors became personal property. *Bowen* v. *Lansing,* 129 Mich 117 (57 LRA 643, 95 Am St Rep 427) ; *Detroit Trust Co.* v. *Baker,* 230 Mich 551."

In a number of other cases the Court has held the interest of a vendor in a land contract to be personalty. It is upon these authorities that plaintiff relies in this instance.

To hold that a vendor's interest under a land contract is personalty to the extent that it may be transferred by parol would be to open the door to fraud. It would jeopardize the purposes of our recording statutes and make it impossible for one to be sure where the actual ownership of a parcel of land, sold in this fashion, actually existed. As this Court said in *Cramer* v. *Ballard,* 315 Mich 496:

"The statute of frauds exists in the law for the purpose of preventing fraud or the opportunity for fraud." (Syllabus 2.)

In the case of *Union Guardian Trust Co.* v. *Rood,* 261 Mich 188, Justice NORTH, when faced with the question of: Can a mortgagor's title in fee to real estate which he has sold on a land contract be fore-

closed by the mortgagee and title to the real estate (subject to the outstanding land contract) be vested in a purchaser at a sale conducted under and in accordance with the collateral sales statute?,* had this to say with reference to the equitable conversion doctrine insofar as it applied to a vendor's interest in a land contract being personalty (pp 191, 192):

"If the doctrine of equitable conversion were to be applied as contended by appellant, it is obvious rather dire results would follow. For notwithstanding the doctrine of equitable conversion, the record title to the land is in the vendor (mortgagor), not in the vendee. This title can be acquired by another only by voluntary conveyance or operation of law. It is too clear for argument that the collateral sales statute does not contain any provision by which title to real estate can be transferred or passed to a purchaser. No one has power incident to the conduct of such a sale to execute and deliver to the purchaser a deed. In this State, title to land incident to foreclosure of a mortgage lien can be passed only by statutory foreclosure, * * * or by foreclosure in chancery. * * * Appellant's claim that his interest in the 3 parcels of land sold on contract is personal property is untenable, because in so asserting an attempt is made to apply the doctrine of equitable conversion under circumstances and to conditions to which it is not applicable. Of this doctrine we have recently said:

" 'As has been pointed out by eminent authority, this theory at best is somewhat farfetched. See note to 5 Pomeroy, Equity Jurisprudence (4th ed), § 2261. Necessity has compelled the adoption of some rule of property by which the rights of descent and distribution are definitely fixed; and it may be conceded that in the absence of some controlling circumstances to the contrary, the application of the doctrine of equitable conversion in the manner above

* See CL 1948, § 442.301 *et seq.* (Stat Ann § 19.411 *et seq.*).— Reporter.

suggested accomplishes a fairly just result. But this theory, which is no more than a legal fiction, should not be applied in such a manner or under such circumstances as will confessedly defeat the disposition that one may make of his or her property so long as such disposition is not in violation of law.

" 'Carried to its logical conclusion, the doctrine of equitable conversion leads to many strange and serious results, especially as applied to lands held by entireties.  *  *  *  Also in the instant case, Mr. and Mrs. Kramer reserved the right to place a mortgage upon their interest in these properties after giving the contracts. Had they given such a mortgage it would hardly be contended that it was a chattel mortgage because it covered only the interest of the vendors which had become personal property under the doctrine of equitable conversion.' *Detroit & Security Trust Co.* v. *Kramer,* 247 Mich 468, 471, 472."

Justice NORTH in this same case further said (p 193):

"It is of great importance that the law should be so administered as to avoid as far as possible uncertainty in titles to real estate. If the theory of equitable conversion were to be applied and under the collateral sales statute foreclosure had in cases, such as this, involving interests in lands and hence the transfer of title thereto, the result would be destructive of all stability of land titles. Courts should not adopt the doctrine of equitable conversion or any other equitable or legal fiction, where doing so would unsettle or render uncertain valuable property rights."

A vendor's interest in a land contract so far partakes of an interest in real estate that the conveyance, transfer (including the gift) or assignment of such an interest under the statute of frauds must be in writing. It cannot, upon the facts before us, be the subject of an oral gift *inter vivos.*

The decree of the circuit court dismissing plaintiff's bill of complaint is affirmed, with costs in the premises in favor of defendants.

The case of Mary Ann Dorow *v.* Everett Gillow is similar in fact to the Brooks case in the sense that a vendor's interest in a land contract is involved. Plaintiff and appellant sued in chancery for a decree to declare a certain land contract a gift *causa mortis,* and not as an asset of the estate of Edna M. Gillow, deceased.

The deceased, Edna M. Gillow, during her lifetime sold on executory land contract 10 acres of land, said contract being dated December 29, 1952. At the time of her death, on December 17, 1953, there was an unpaid balance of $4,750 with interest at 5% thereon from October 1, 1953. This land contract, with the handwriting and the signature of the deceased thereon and on a separate paper attached thereto by scotch tape, was found in a desk after the deceased's death, among her papers. Included in the desk, in addition to the said land contract, was a further writing of the deceased but separate and unattached to the land contract. All papers in the handwriting of the deceased are undated. The separate and unattached writing was as follows:

"brothers is to care for this. She to have the use of it as long as she lives & at her death it is to go to some Charity or Fund.
"Syned EDNA M. GILLOW"

The plaintiff was a sister of the deceased. It is the claim of the plaintiff and appellant that the land contract in question, introduced into evidence, with the writing and signature of the deceased thereon and attached thereto on another paper by scotch tape, made and delivered a gift *causa mortis* from the deceased to the plaintiff and appellant, through the equitable doctrine of trusts.

It is the contention of the defendants who, with the exception of Mr. Reid, are the devisees and legatees under the last will and testament of the deceased —Mr. Reid being the administrator of the estate of the deceased—that the vendor's interest in the land contract is such an interest in real property that it is subject to the statute of frauds,* and that in order to convey, assign or transfer title thereof it is necessary that a writing be used.

Plaintiff argues that upon the execution of said land contract, the interest of deceased, as vendor thereunder, was converted to personalty, under the doctrine of equitable conversion, and that as long as the contract was in force, the said vendor's interest was considered as personalty and was no longer subject to the statute of frauds, and was a subject to gift *causa mortis* as personalty.

A gift *causa mortis* is defined in 13 MLP, Gifts *Causa Mortis*, § 31, p 84, as follows:

"A gift *causa mortis* is a gift of personal property made by a person in the expectation of imminent death, on condition that the donor dies as anticipated, leaving the donee surviving him."

The elements necessary to constitute a valid gift are stated by this Court on pages 141 and 142 of *Molenda* v. *Simonson*, 307 Mich 139, and which reads as follows:

"Three elements are necessary to constitute a valid gift. The donor must possess the intent to gratuitously pass title to the donee. *Chamberlain* v. *Eddy*, 154 Mich 593, 603; and *Geisel* v. *Burg*, 283 Mich 73, 80. An actual or constructive delivery is essential to effectuate a gift either *inter vivos* or *causa mortis*. *In re Van Wormer's Estate*, 255 Mich 399. In order for the gift to be consummated, the donee must accept it, although a gift beneficial to the

---

* See CL 1948, § 566.106 (Stat Ann 1953 Rev § 26.906).—REPORTER.

donee will be presumed to have been accepted. *Holmes* v. *McDonald,* 119 Mich 563 (75 Am St Rep 430)."

If the vendor's interest in a land contract is an interest in real estate, then it is apparent no valid gift *causa mortis* could have been made. The same rules of law govern this case as govern the Brooks case. I do not feel it necessary to restate them, but only make reference to them for the Court's reasoning in holding that a vendor's interest in a land contract is an interest in real estate, for the purpose of the instant case, and in order to transfer, convey or assign such interest under the statute of frauds such an assignment or conveyance must be in writing and signed by the party. No such writing is claimed here. No gift *causa mortis* was proven.

Plaintiff and appellant claims that the land contract in question, introduced in evidence, with the writing and signature of the deceased thereon and attached thereto on another paper by scotch tape, made and delivered a gift *causa mortis* from the deceased to the plaintiff and appellant, through the equitable doctrine of trusts. The writings that plaintiff and appellant relies on were exhibits at the trial of said cause and are as follows:

"Bal due on this contract is to be used to buy a home for my sister Mary Ann Dorow. You is too live in it & at her death it is too be sold & the money to be set aside & used for sickness for any of the Brothers themselves, if they need it.
                    "MRS EDNA GILLOW"

"brothers is to care for this. She to have the use of it as long as she lives & at her death it is to go to some Charity or Fund.
                    "Syned EDNA M. GILLOW"

This Court has had before it the equitable doctrine of trusts on numerous occasions. It has held in a

number of these cases that it requires no particular form of words to create a trust. *Boden* v. *Renihan,* 299 Mich 226, and the following cases cited therein: *Chadwick* v. *Chadwick,* 59 Mich 87; 1 Perry, Trusts (1st ed), § 112; *Harding* v. *Glyn,* 1 Atk 469 (26 Eng Rep 299); *Bernard* v. *Minshull,* Johns 276 (70 Eng Rep 427); *Warner* v. *Bates,* 98 Mass 274; *Cummings* v. *Corey,* 58 Mich 494; *Crissman* v. *Crissman,* 23 Mich 217; *Ellis* v. *Secor,* 31 Mich 185 (18 Am Rep 178); *Leland* v. *Collver,* 34 Mich 418; *Miller* v. *Aldrich,* 31 Mich 408; *Cromwell* v. *Brooklyn Fire Ins. Co.,* 44 NY 42 (4 Am Rep 641); *Huxley* v. *Rice,* 40 Mich 73.

This Court has constantly held to the theory that the substantial terms of the trust itself must be established in such a manner that courts can describe the responsibilities and duties of those by whom the trust must be administered.

In *Renz* v. *Stoll,* 94 Mich 377, 380 (34 Am St Rep 358), the Court said:

"The rule is well stated in Perry on Trusts (1st ed), ch 3, § 83:

" 'The objects and nature of the trust must always appear from such writings with sufficient certainty, and also their connection with the subject matter of the trust. Indeed, courts require demonstration on the latter point; and the trust will not be executed if the precise nature of it, and the particular persons who are to take as *cestuis que trust,* and the proportions in which they are to take, cannot be ascertained. When all these particulars properly appear from writings signed by the party, the trust will be executed.'

"And again, in Browne on Statute of Frauds (chapter 7, § 108), it is said:

" 'The words used  *  *  *  must distinctly relate to the subject matter, and must serve to show the court that there is a trust, and what that trust is.' "

Plaintiff and appellant relies upon the case of *Ellis* v. *Secor,* 31 Mich 185 (18 Am Rep 178), as authority for the equitable trust doctrine. There is no question that such a trust may be set up, even under the same general circumstances as we have before us. In the case of *Ellis* v. *Secor, supra,* at page 193, the Court said:

"There can be no doubt concerning the meaning of the memorandum left by the deceased. It is unconditional and unequivocal. We think it clear that Rachael Hill did all that she could to create a gift *causa mortis,* and fully intended it."

The difficulty with the plaintiff and appellant's reliance here in this case on the trust theory is that the instruments relied upon are so ambiguous that not only would it be difficult to ascertain the true intent of the settlor but it would be almost, if not actually, impossible to draft an enforceable decree in accordance with the wishes of the supposed settlor. Even a casual reading of the instruments would cause anyone to reach the same conclusion as the judge in the lower court reached, that it was impossible to tell what the terms of the trust would be or how it was to be carried out. This distinguishes the instant case from that of *Ellis* v. *Secor, supra,* and precludes the use of the doctrine of equitable trusts in the instant case.

The decree of the circuit court dismissing plaintiff's bill of complaint is affirmed, with costs in the premises in favor of defendants.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, EDWARDS, and VOELKER, JJ., concurred.