BRAIDWOOD v. HARMON

1. GIFTS—INTER VIVOS GIFT—REQUIREMENTS.

A valid *inter vivos* gift requires (1) that the donor must possess the intent to pass gratuitously title to the donee, (2) that actual or constructive delivery be made, and (3) that the donee accept the gift.

2. GIFTS—INTER VIVOS GIFT—DONOR'S WILL—FAILURE TO MENTION GIFT—EVIDENTIARY VALUE.

The silence of the will of the alleged donor of *inter vivos* gifts concerning the promissory note and mortgage given as gifts is as consistent with the contention that a gift was made as with the contention that a gift was not made, because if a gift is complete, the property given ceases to be part of the donor's estate and thus there is no need for the donor to recite the gift in his will.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 38 Am Jur 2d, Gifts §§ 16–35.
[2] Satisfaction or ademption of general legacy by inter vivos gift, transfer, or payment to the legatee or another. 28 ALR2d 9.
[3] 38 Am Jur 2d, Gifts §§ 95, 107.
[4] 38 Am Jur 2d, Gifts § 28.
[5, 6] 58 Am Jur, Witnesses § 214 *et seq.*
[6] 38 Am Jur 2d, Gifts §§ 98–102.
[7] 30 Am Jur 2d, Evidence §§ 1080, 1081.

3. Gifts—Inter Vivos Gift—Promissory Note—Mortgage—De-
livery—Manual Delivery—Sufficiency.

> A valid *inter vivos* gift of a promissory note securing a mort-
> gage, and a mortgage, can be completed by manual delivery
> of the instrument without a written assignment or other written
> evidence of the making of the gift.

4. Gifts—Inter Vivos Gift—Promissory Note—Life Income Re-
served—Validity.

> A gift of a promissory note may be complete even though the
> donor has reserved for his lifetime the income from the do-
> nated property.

5. Evidence—Dead Man's Statute—Admissible Testimony—Cor-
roboration.

> Testimony by a party which is adverse to a person incapable of
> testifying is admissible even though the matter must have been
> equally within the knowledge of the party who seeks to testify
> and the person incapable of testifying where some material
> portion of the party's testimony is supported by some other
> material evidence tending to corroborate his claim; every
> portion of the survivor's testimony need not be corroborated,
> only a material portion of the testimony need be corroborated
> (MCLA § 600.2166).

6. Evidence—Dead Man's Statute—Admissible Testimony—Cor-
roborated Testimony.

> Testimony of the plaintiff's concerning conversations with a
> deceased donor which showed that the donor had given them,
> as gifts, a promissory note and a mortgage on the plaintiffs'
> home was admissible where one of the plaintiff's relatives
> testified that the donor had said "when I die it is your home
> free and clear" and another of the plaintiff's relatives testified
> that the donor had told her that he had signed the home over
> to the plaintiffs at his death and the home would belong to
> the plaintiffs (MCLA § 600.2166).

7. Evidence—Testimony—Corroboration—Credibility of Corrobo-
rating Witness

> Testimony is corroborated without regard to whether the cor-
> roborating witness or the witness whose testimony has been
> corroborated is believed by the judge; corroboration does not
> mean corroborated by evidence which the trial judge believes.

Appeal from Oakland, Robert L. Templin, J.
Submitted Division 1 November 13, 1970, at Detroit.
(Docket No. 9703.)   Decided February 19, 1971.

Complaint by Harold Braidwood and Wanda
Braidwood, his wife, against Henry W. Harmon,
administrator with will annexed of the estate of
Clarence L. Pinel, and Beatrice Case, to cancel a
promissory note secured by a mortgage and for an
injunction against foreclosing the mortgage.  Judg-
ment for defendants.  Plaintiffs appeal.  Reversed
and remanded.

*John Morth* and *Riseman, Lemke & Piotrowski*
(by *Harry Riseman*) for plaintiffs.

*David B. Lichtig,* for defendants.

Before: V. J. BRENNAN, P. J., and LEVIN and
PETERSON,* JJ.

LEVIN, J.   Plaintiffs, Harold and Wanda Braid-
wood, executed a promissory note secured by a
mortgage on their home in favor of Harold Braid-
wood's uncle, Clarence L. Pinel. After Pinel's death,
the Braidwoods commenced this action claiming
that Pinel had, during his lifetime, made a gift of
the note and mortgage to them.  They asked that
the note and mortgage be cancelled and that Pinel's
administrator be enjoined from foreclosing the
mortgage.

After hearing the evidence offered by both par-
ties, the judge, as trier of fact, found that the
Braidwoods had failed to prove a gift *inter vivos*
and entered an order dismissing their complaint.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Among the issues is whether the Braidwoods' claim may be proved orally. It is also necessary to consider the recently amended dead man's statute.

Pinel went to live in the home of his nephew, plaintiff Harold Braidwood, in 1955 or 1956. Shortly after his arrival Pinel paid off the mortgage on the Braidwood home. In return the Braidwoods executed and delivered to Pinel a note and mortgage dated January 7, 1956 for $8,800, payable $50 a month, including interest at 4% *per annum.*

James Braidwood, Harold's brother, testified that a short time after the note and mortgage were executed Pinel handed the instruments to Harold and said, "As long as I'm living I want you to pay me and when I die it is your home free and clear". A sister of Mrs. Braidwood testified that Pinel had told her and her husband, "that he had signed the home over to Mr. Braidwood at his death, the home would be his and everything that he owned". Photocopies of the note and mortgage were attached to the Braidwoods' complaint filed when this action was commenced, and the originals were offered in evidence by the Braidwoods.

The judge refused to allow Harold and Wanda Braidwood to testify concerning their conversations with Pinel on the ground that their testimony concerned a matter equally within the knowledge of the deceased and was, therefore, barred by the dead man's statute.[1]

Pinel remained in the Braidwood home for over two years. In 1958 he moved to Oregon and subsequently to California, where he died on September 29, 1965. Four weeks before his death he wrote the Braidwoods about an intended visit and said, "I want you to have the house where you live after I

---

[1] MCLA § 600.2166 (Stat Ann 1970 Cum Supp § 27A.2166).

am gone". The Braidwoods did not learn of Pinel's death until February 1966, when Pinel's sister, the residuary legatee under Pinel's will, wrote to demand that the Braidwoods make the mortgage payments to her. The Braidwoods then stopped payment on the checks issued after Pinel's death and made no further monthly payment.

In April 1969 the Braidwoods paid $500 to the Michigan attorney acting for Pinel's estate. This payment is relied on by the defendants as being incompatible with the Braidwoods' claim of ownership. The Braidwoods explained that the payment was made in response to the advice of their then attorney, who had told them that they had to refinance the mortgage. They said they made the payment on their own initiative in order to obtain time to arrange the required financing. After making the payment they engaged their present attorney and made no further payment. They commenced this action after the defendants had commenced foreclosure proceedings.

The defendants offered in evidence a letter dated November 10, 1959, written to Pinel by an Oregon attorney, with enclosures of a photocopy of a "mortgage" and of a "mortgage note", a property tax search certificate, a certification of insurance coverage and "your letter to Braidwood dated 9/17/59 with registry receipt". The Oregon attorney's letter stated that Pinel should "retain this information in your permanent file". The referenced documents were not further identified. No testimony was offered concerning the November 10, 1959 letter to Pinel or its subject matter.

The trial judge found:

"First of all, the court finds in this matter that what we are really dealing with is an interest in

land. The court is sympathetic with the plaintiffs, although the court doesn't feel they have really lost too much because at the time the new mortgage was granted to them by the deceased, Mr. Pinel, they did have rather low payments, $50 a month, with a four percent rate of interest.

"The court finds that there was talk by the deceased that he meant to give the home to the plaintiffs, but, while he might have said it was his desire for them to have the home free and clear upon his death, the court finds that this did not constitute an *inter vivos* gift. At the most, it constituted a desire to create a testamentary gift, a gift which was never consummated.

"The court is primarily impressed with the will of the decedent, Mr. Pinel, which is defendant's Exhibit B, written on the 10th day of October 1958, when the mortgage in question was executed in January 1956. In his will, Mr. Pinel in paragraph three, after giving a bequest of $500 to his niece, gives and bequeaths all the rest, residue and remainder of his property to his sister, Beatrice Case. There is just nothing there about a gift of the mortgagee's interest in this house to the plaintiffs.

"As a matter of law, the court cannot hold that the plaintiffs are entitled to anything at all. There might have been intentions, there might have been talk, but it has to be in writing and it was never in writing, testamentary or otherwise."

For reasons about to be stated, we have concluded that the judge erred (1) in excluding the testimony of Harold and Wanda Braidwood on the ground that it was barred by the dead man's statute, (2) when he ruled that, "what we are really dealing with is an interest in land" and that, "as a matter of law * * * it has to be in writing and it was never in writing, testamentary or otherwise", and (3) in counting as an adverse factor that the later-dated will makes no mention of the gift.

It is entirely true that the judge could have decided against the claims of the Braidwoods because he disbelieved the testimony of the Braidwood family members. The tendency of his findings would appear, however, to support the view that he credited at least some of their testimony. In any event, he did not place his decision on the ground that he did not believe them. We have no way of knowing whether he would have reached a different result had he thought it permissible to consider the testimony of Harold and Wanda Braidwood themselves or to find a completed gift even though the will did not mention the claimed gift and there was no writing evidencing the transfer of the note and mortgage to them. Accordingly, we must remand for a new trial at which the facts are appraised unrestricted by an erroneous view of the law.

The elements of a gift *inter vivos* have recently been restated by our Supreme Court:

"It may be stated generally that the three elements necessary to constitute a valid gift are these: (1) that the donor must possess the intent to pass gratuitously title to the donee; (2) that actual or constructive delivery be made; and (3) that the donee accept the gift." *Osius* v. *Dingell* (1965), 375 Mich 605, 611.

Pinel's will, dated October 10, 1958, bequeaths $500 to a niece and devises the rest, residue, and remainder of his estate to his sister. The will's silence concerning the note and mortgage is consistent with the contentions of both the plaintiffs and the defendants. Merely because the will makes no mention of the claimed gift does not tend to negate the claim that there was a completed gift. If a gift is complete the property given ceases to be part of

the donor's estate; there is no need to recite the gift in his will.[2]

For some purposes a mortgage is, indeed, regarded as an "interest in land".[3] But the rule in Michigan and many other jurisdictions is that a valid gift *inter vivos* of a note and mortgage can be completed by manual delivery of the instruments without a written assignment or other written evidence of the making of the gift.[4] It is also established that a gift of a promissory note may be complete even though the donor has reserved for his lifetime the income from the donated property:[5]

---

[2] See *Lumberg* v. *Commonwealth Bank* (1940), 295 Mich 566, holding that a gift *causa mortis* of a cashier's check is not revoked by a subsequent will, silent as to the check, which bequeathed the entire estate to a person other than the donee.

[3] See MCLA § 566.106 (Stat Ann 1970 Rev § 26.906); *Aetna Mortgage Company* v. *Dembs* (1968), 13 Mich App 686; contrast *Dougherty* v. *Randall* (1855), 3 Mich 581.

[4] *Hoyt* v. *Gillen* (1914), 181 Mich 509, 512; *Cook* v. *Fraser* (1941), 298 Mich 374, 378; *Hagerman* v. *Wigent* (1896), 108 Mich 192; *Dougherty* v. *Randall, supra*. See, generally, 38 Am Jur 2d, Gifts, §§ 54, 55, pp 860–863, and *Bernkrant* v. *Fowler* (1961), 55 Cal 2d 588 (12 Cal Rptr 269, 360 P2d 906, 908), where the California Supreme Court observed that the general rule is that an "oral agreement providing for the discharge of an obligation to pay money secured by an interest in real property is not within the real property provision of the statute of frauds, on the ground that the termination of the security interest is merely incidental to and follows by operation of law from the discharge of the principal obligation."

In *Brooks* v. *Gillow* (1958), 352 Mich 189, the Michigan Supreme Court held that the statute of frauds (MCLA § 566.106 [Stat Ann 1970 Rev § 26.906]) requires that a transfer or assignment of a vendor's interest in a land contract be in writing. None of the Michigan cases above cited in this footnote were adverted to in the *Brooks* opinion; we do not think that we could properly conclude that *Brooks* overrules those cases *sub silentio*. As pointed out in *Dougherty* v. *Randall*, the interest of a mortgagee is an incident of the debt. The debt (evidenced by a note) is a chose in action and clearly can be transferred without a writing. The consideration which moved the *Brooks* Court, namely that the legal title is shown of record as belonging to the land contract vendor, is not necessarily controlling where the transfer of the security interest (the mortgagee's interest) follows as an incident to a transfer of the debt. *Brooks* is critically discussed in 5 Wayne L Rev 137, 144 (1958).

[5] *Shepard* v. *Shepard* (1910), 164 Mich 183, 201; *Jackman* v. *Jackman* (1935), 271 Mich 585, 589; *Hagerman* v. *Wigent, supra,*

"nor is the gift defeated by the fact that the donor reserved to himself the use or income from the subject-matter of the gift." *Shepard* v. *Shepard* (1910), 164 Mich 183, 201.[6]

As we have already indicated, the judge also erred in excluding, as a matter of law, the testimony of Harold and Wanda Braidwood on the basis of the dead man's statute. In 1967 the dead man's statute was amended[7] to permit a party to testify as to a matter equally within the knowledge of a deceased person, "if some material portion of his testimony is supported by some other material evidence tending to corroborate his claim". The 1967 amendment was adopted on the recommendation of the Michigan Law Revision Commission. The Commission in its accompanying report stated:

"It is not intended that every portion of the survivor's testimony need be corroborated. Rather, if any material portion is corroborated either by testimony of other witnesses or by demonstrative evidence, then the testimony of the survivor should be

---

fn 4. See, generally, 38 Am Jur 2d, Gifts, § 26, pp 829, 830, fns 18 and 19 and accompanying text.

[6] In *Shepard* v. *Shepard, supra,* the subject matter of the gift was an unsecured promissory note. In *Jackman* v. *Jackman, supra,* it was a secured promissory note. In both cases the donor continued to receive and retain payments on the notes during his lifetime after the gift was alleged to have been made. Nevertheless, the trial judges' findings that a completed gift had been made were affirmed on appeal. It is true that in these cases the delivery of the donated property was established by a written assignment, while here the only evidence of delivery is the testimony of the alleged manual transfer of the note and mortgage and the fact that the Braidwoods had physical possession of the original signed copies of the note and mortgage. But, as previously stated, the rule in this State is that a chose in action may be transferred manually without a written assignment. See, generally, 38 Am Jur 2d, Gifts, § 55, pp 862, 863, and § 26, pp 829, 830, concerning *inter vivos* gifts of notes and the effect of a reservation for the life of the donor of the income from the donated property.

[7] See PA 1967, No 263, further amended by PA 1969, No 63 (MCLA § 600.2166 [Stat Ann 1970 Cum Supp § 27A.2166]).

admitted." Mich Law Rev Comm, First Annual Report, 1966, p 29.

The testimony of Harold's brother and of Wanda's sister corroborated the excluded testimony of Harold and Wanda.[8] The excluded testimony should have been received in evidence and considered by the judge in deciding the disputed issue of whether there was an *inter vivos* gift of the note and mortgage.

The judge may, of course, as trier of fact, disbelieve the testimony of Harold and Wanda and the members of their families, but he could not refuse to consider Harold's and Wanda's testimony because he does not believe the corroborating testimony. It would be contrary to the clear intendment of the 1967 legislation to permit a judge to exclude a party's testimony because he does not believe the proffered corrobative evidence. In ordinary every day usage, testimony is said to be "corroborated" without regard to whether the corroborating witness or the witness whose testimony has in that manner been substantiated is believed. The word "corroboration", as used in this statute, does not mean "corroborated by evidence which the trial judge believes".[9]

Upon remand, following the completion of the proofs at the new trial, the judge should clearly indicate in his findings of fact the bases of his decision and particularly his determinations concern-

[8] The letter written by Pinel to the Braidwoods a few weeks before his death might also be regarded as tending to corroborate their claim. *Cf. Sleboede* v. *Sleboede* (1969), 16 Mich App 202.

[9] See *People* v. *Fiore* (1962), 12 NY2d 183 (188 NE2d 130, 136), holding that the credibility of accomplice testimony is to be decided by the trier of fact. Similarly, see *People* v. *Riker* (1918), 202 Mich 377, 383; *Lassiter* v. *Seaboard Air Line R. Co.* (1916), 171 NC 283 (88 SE 335, 337). *State* v. *Peacock* (1925), 201 Iowa 462 (205 NW 738).

ing the credibility and quality of the evidence offered by the parties. To properly perform our reviewing function we need to know the path the trial judge takes through the conflicting evidence. *McClary* v. *Wagoner* (1969), 16 Mich App 326, 328.

Reversed and remanded for a new trial.

All concurred.