CASSIDY v WISTI

OPINION OF THE COURT

1. ATTORNEY AND CLIENT—MALPRACTICE—DEFAULT JUDGMENT—VACATION—QUESTION OF FACT.

Whether defendant attorney's stipulation, without consent of plaintiff clients, to vacate a default judgment against a church 15 months after entry constituted malpractice was a question of fact for the jury where the jury, from some of the conflicting testimony, might justifiably conclude that the parties had an agreement or understanding that a recovery in plaintiffs' case against the church would be sought solely from liability insurance proceeds rather than from the church's private funds and that defendant had acted within the framework of such an understanding in stipulating to set aside the default judgment upon learning that the church's liability insurance carrier was denying coverage to the church in plaintiffs' case because it had not been notified of the institution of the action.

2. ATTORNEY AND CLIENT—MALPRACTICE—APPEAL AND ERROR.

Failure of plaintiffs to continue a negligence action against a church to final judgment prior to instituting a malpractice action against defendant for stipulating, without plaintiffs' consent, to set aside their default judgment against the church 15 months after entry, makes any appellate review of the order setting aside the default judgment dependent upon the possible filing by plaintiffs of an application for leave to appeal that order.

3. ATTORNEY AND CLIENT—MALPRACTICE—EVIDENCE—DEAD MAN'S STATUTE.

Testimony by defendant attorney that he had advised the trial judge, since deceased, prior to taking the plaintiffs' default

REFERENCES FOR POINTS IN HEADNOTES

[1] 7 Am Jur 2d, Attorneys at Law § 136.
[2] 4 Am Jur 2d, Appeal and Error § 314.
   7 Am Jur 2d, Attorneys at Law § 175.
[3] 58 Am Jur, Witnesses § 214 *et seq.*
   29 Am Jur 2d, Evidence § 759.

judgment against a church, that if the church's liability insurance carrier had not been served with the pleadings, he intended to set the default aside because he would not take a money judgment out of the church collections or treasury, did not contravene the dead man's statute since defendant's testimony related only to his statements to the judge, not to a two-way conversation between him and the judge (MCLA 600.2166).

Appeal from Houghton, Stephen D. Condon, J. Submitted Division 3 June 15, 1972, at Iron Mountain. (Docket No. 11984.) Decided October 25, 1972.

Complaint by Jane C. Cassidy and Jacques Cassidy against Andrew H. Wisti and Gordon V. Jaaskelainen for legal malpractice. Verdict and judgment of no cause of action. Plaintiffs appeal. Affirmed.

*Patrick & Johnson,* for plaintiffs.

*McDonald & Weber,* for defendants.

Before: FITZGERALD, P. J., and HOLBROOK and T. M. BURNS, JJ.

FITZGERALD, P. J. This is a malpractice action brought against the Hancock law firm of Wisti & Jaaskelainen by plaintiff husband and wife, Jacques and Jane Cassidy. The action in the Houghton County Circuit Court resulted in a jury verdict in favor of defendants of no cause of action. Plaintiffs appeal as of right following the denial by the trial court of a motion for judgment notwithstanding the verdict and/or new trial.

The motivating force behind the present action was the conduct of defendant attorney Wisti who stipulated, seemingly without the knowledge of his clients, the plaintiffs herein, to set aside a default judgment which had been entered in plaintiffs' favor. It appears from the record that in February 1964, plaintiff Jane Cassidy was injured while

doing volunteer work on the premises of St. Ignatius Loyola Grammar School in Houghton. The attorney whom she had first consulted was fatally injured in an automobile accident and the Cassidy file was turned over to defendant Wisti. The record supports plaintiffs' contention that service of process was made on Bishop Thomas Noa of the Catholic Diocese of Marquette, St. Ignatius Loyola Church, on September 18, 1964. The Bishop did not respond to the pleadings within the required 20 days following service of summons and complaint. Defendant Wisti filed an affidavit in support of default on December 1, 1964. A default judgment was entered on February 3, 1965, in favor of plaintiff Jacques Cassidy in the amount of $10,000 and in favor of plaintiff Jane Cassidy in the sum of $25,000.

On May 19, 1966, more than 15 months after entry of the default judgment, defendant Wisti, along with counsel representing Bishop Noa and the church, filed a stipulation to set aside the default judgment. On May 25, 1966, the circuit judge, since deceased, entered an order setting aside the judgment. Not until May 27, 1966, did defendant Wisti inform his clients, plaintiffs herein, of the action which he had taken. He sent a letter to them in Oregon, where they had moved from their former residence in Houghton. In that letter he stated that the church's insurance carrier had not been notified by the Bishop of the legal proceedings instituted against the Bishop and the church and that, as a result, there was no policy of insurance available through which the plaintiffs could recover a judgment. The trial of the instant malpractice action revealed a conflict of testimony as to whether, before the taking of the default judgment, defendant Wisti and the plaintiffs Cas-

sidy had resolved to collect, if at all, only from the liability insurance carrier and not from the church. Defendant Wisti testified that such an understanding had been had between himself and the Cassidys. The Cassidys denied any such understanding.

Following plaintiffs' notification by Wisti of the action which he had taken to obtain an order setting aside plaintiffs' default judgment, and some further negotiations between the parties, the present action was commenced. The complaint filed in this case averred in part:

"7. That on May 19, 1966, the Defendants herein, without the permission, authority, or knowledge of the Plaintiffs, stipulated to set aside the Default Judgment entered against the Bishop Noa and the Archdiocese of Marquette."

In answer to the foregoing, defendants stated:

"7. Defendants admit setting aside Default Judgment in the best interest of clients."

Immediately prior to trial in the instant case, plaintiffs' trial counsel filed a motion for summary judgment pursuant to GCR 117.2(2), on the ground that the defendants had failed to state a valid defense to the claim asserted against them; defendants, by answer, having admitted setting aside the default judgment, and not having denied that such action was without the permission, authority or knowledge of plaintiffs.[1] It was plaintiffs' contention that the unauthorized act of defendants rendered them liable to plaintiffs. The court denied plaintiffs' motion, ruling that the question as to

---

[1] GCR 1963, 111.5: "Effect of Failure to Deny. Averments in a pleading to which a responsive pleading is required * * * are admitted when not denied in the responsive pleading."

whether defendants were guilty of malpractice was one of fact for the determination of the jury.

On appeal, plaintiffs contend that the conduct by an attorney in stipulating to set aside a client's judgment 15 months after its entry constitutes professional malpractice as a matter of law. Plaintiffs claim that defendants' act in stipulating to set aside the judgment was contrary to applicable statutory and case law authority.[2] It may be open to question whether or not the court, on May 25, 1966, properly ordered that the default judgment be set aside. That question, however, is not before this Court on the instant appeal. *Downriver Loan Co v Gabbert,* 37 Mich App 411 (1971). Plaintiffs assert that, notwithstanding the validity of defendants' action in view of GCR 1963, 520.4 and 528,

---

[2] Plaintiffs cite GCR 1963, 520.4, which states in part: "For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 528. If personal service was made upon the party against whom the default was taken, it shall not be set aside unless application to have it set aside is made either before the entry of judgment or within 4 months after the default was regularly filed or entered except as provided in Rule 528."

Since 15 months elapsed after the default judgment was entered before the stipulation was filed to set the judgment aside, plaintiffs contend that GCR 1963, 520.4 is dispositive and that the order setting the judgment aside was erroneously entered.

GCR 1963, 528.3, provides in part: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: * * * (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time * * * ."

In 3 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 190, the following is stated regarding GCR 1963, 528.3(6): "While this broad language was not intended to relieve a party of the necessity for protecting his interest by normally prescribed procedures, it does give the courts ample power to vacate judgments whenever extraordinary circumstances make it necessary to achieve justice."

GCR 1963, 528.3(6), above quoted, is the only provision applicable to the facts of this case which might be employed to justify the purportedly untimely order entered upon defendant Wisti's stipulation setting aside the default judgment.

and irrespective of whether plaintiff Jane Cassidy
had wanted to collect her judgment from the
insurance company rather than from the church,
defendant Wisti undertook, and improperly so, to
set aside the default judgment without authoriza-
tion from plaintiffs; and that such action, admitted
by defendants, renders them liable to plaintiffs as
a matter of law.

Defendants assert that the trial court was cor-
rect in assuming at the beginning of trial that
there were going to be factual issues which would
be disputed and upon which the minds of reasona-
ble men might differ; and that the record of the
trial proceedings supports the action of the court
in denying plaintiffs' motion for summary judg-
ment.

The transcript in this case reveals a conflict of
testimony regarding whether the parties had
agreed to look only to the church's liability insur-
ance carrier in satisfaction of a judgment which
might be obtained against the church.

Examination of defendant Wisti disclosed in part
the following testimony:

"*Q.* Now, did you discuss with [Jane Cassidy] the
source of any funds that might be used if you ever got
into a position where you could collect from one of the
defendants?

"*A.* Yes.

"*Q.* Would you tell the jury the gist of the discussion
you had with Mrs. Cassidy about that?

"*A.* Well, in our office we do not take cases against
any defendants unless they carry liability insurance.
We have made a practice of not suing anyone unless
there is an insurance company that is the source of
collectibility.

"We discussed this with Mr. and Mrs. Cassidy, about
the fact that the church did carry a policy of liability
insurance. We were aware of that from the contents of

the file which had been given to us by [plaintiffs'
original attorney, since deceased]. We all clearly under-
stood that if we were going to collect from anyone, that
we would ultimately collect from the liability insurance
carrier and not from the church."

Plaintiff Jane Cassidy, on the other hand, testi-
fied in part as follows:

"*Q.* All right. Now do you remember—and you testi-
fied here that there was no agreement between you,
your husband and Mr. Wisti that you would seek the
money only from an insurance company. Do you deny
that there was such an agreement between you?

"*A.* No. I—because Mr. Wisti, my husband and I—Mr.
Wisti said you will get the money from where we can
get it, from the insurance company or from the church.
It was never going to really come out of the basket, it
was just a standing joke.

"*Q.* I'm going to ask you if there was an agreement
by you and your husband with Mr. Wisti that the only
source of funds that you would look to to satisfy this
judgment would be insurance company funds.

"*A.* No, there was no agreement there."

From the testimony presented upon the trial of
this cause, the jury might justifiably conclude that
an agreement or understanding existed between
the parties to the effect that a recovery in plain-
tiffs' case against the church would be sought
solely from liability insurance proceeds rather
than from the church's private funds. The jury
might conclude that defendant Wisti had acted
within the framework of such an understanding in
stipulating to set aside plaintiffs' default judgment
upon learning that the church's liability insurance
carrier was denying coverage to the church in this
case. Such finding would support a determination

that defendants were not guilty of malpractice.[3]
The record, therefore, reflects a basic issue of fact
which was required to be resolved by the jury as
the trier of fact and, as urged by defendants, the
matter was not ripe for summary judgment. See 7
Am Jur 2d, Attorneys at Law, § 192, pp 159–160.

From a legal standpoint it may be said that an
attorney's conduct, such as that here under scru-
tiny, does not constitute malpractice.[4] We point
out, however, that we do not necessarily endorse
judgment by an attorney such as that which is
manifested on the record in this case.

Inasmuch as plaintiffs' present counsel did not
continue the action against St. Ignatius Loyola
Catholic Church to final judgment prior to institut-
ing this malpractice action, any review of the
order setting aside the default judgment must
await the possible filing of an application for leave
to appeal. *Downriver Loan Co v Gabbert, supra.*

Plaintiffs also contend that the trial court
abused its discretion in denying their motion for
new trial. The motion was predicated in part upon
the trial court's admission, over plaintiffs' objec-
tion, of certain testimony by defendant Wisti. That
testimony concerned advice he had purportedly
given the trial judge, since deceased, in plaintiffs'
case against the church. It was revealed that
defendant Wisti, prior to taking the default judg-

---

[3] Black's Law Dictionary (4th ed) defines malpractice at p 1111 as
follows: "Any professional misconduct, unreasonable lack of skill or
fidelity in professional or fiduciary duties, evil practice, or illegal or
immoral conduct."

[4] "An attorney may open a default which has been taken, whether
properly or improperly, against the opposite party, and may vacate
the judgment entirely, even against the instructions of his client.
Apart from this, however, it is generally held that, in the absence of
express authority, an attorney has no power to open, vacate, or set
aside, a final judgment rendered in favor of the client in the cause in
which the attorney was employed * * * " 7 CJS, Attorney and Client,
§ 94, p 912.

ment, had informed the trial judge that in the event that the church's liability insurance carrier had not been served with the pleadings, defendant Wisti intended to set the default aside. Wisti also testified that he had indicated to the judge, that, under no circumstances, would he proceed to take a money judgment out of the church collections or church treasury. Plaintiffs contend that such testimony was in contravention of the dead man's statute, MCLA 600.2166; MSA 27A.2166;[5] and that defendant Wisti was thereby enabled to defend against plaintiffs' action by introducing a "conversation" with the judge which could not be substantiated or corroborated.

Defendants counter by asserting, and correctly so, that the testimony of defendant Wisti, to which objection was registered, was only that of his purported statements to the judge rather than testimony of a two-way conversation between Wisti and the judge; that, in any event, plaintiff Jane Cassidy also testified that she knew and believed that Wisti had advised the trial judge in the manner indicated by his testimony; and that the testimony was not, therefore, prejudicial to plaintiffs.

In the instant case, neither party was incapable of testifying, and the testimony of defendant Wisti was in material part corroborated by the testimony of plaintiff Jane Cassidy. See *Braidwood v Harmon,* 31 Mich App 49 (1971). We hold that the

---

[5] "(1) In any action by or against a person incapable of testifying, a party's own testimony shall not be admissible as to any matter which, if true, must have been equally within the knowledge of the person incapable of testifying, unless some material portion of his testimony is supported by some other material evidence tending to corroborate his claim.

"(2) A 'person incapable of testifying' includes any individual who is incapable of testifying by reason of death * * * ."

trial court did not abuse its discretion in denying plaintiffs' motion for new trial.

Affirmed. Costs to defendants.

T. M. BURNS, J., concurred.

HOLBROOK, J. *(concurring)*. This writer concurs in the result after reviewing the opinion of my fellow judges on the limited issues raised by the appellants in the trial court and this Court.