ROBERTS v AUTO-OWNERS INSURANCE COMPANY

Docket No. 64515. Submitted May 16, 1983, at Detroit.—Decided October 3, 1983. Leave to appeal granted, 419 Mich —.

Ralph Roberts and Delores Roberts individually and as next friend of Christine M. Rodzos, a minor, brought an action against Auto-Owners Insurance Company in the St. Clair Circuit Court, alleging breach of a no-fault insurance contract and intentional infliction of emotional distress. Christine was injured when struck by a motor vehicle. The Roberts' owned vehicles insured by the defendant and had attempted to make claims on this policy. The court, James T. Corden, J., granted judgment for plaintiffs. Defendant appealed. *Held:*

1. The mere breach of an insurance contract is not sufficient to support a claim of intentional infliction of emotional distress. However, intentional conduct designed to frustrate a claimant's attempts to apply for benefits and define the limits of the policy may be considered to be extreme and outrageous and may support an action for intentional infliction of emotional distress. Plaintiff's allegations stated a cause of action and were supported by credible evidence.

2. It is error to allow lawyers to testify as expert witnesses for the purpose of establishing the legal sufficiency of a document and to interpret the law. However, this error was not properly preserved for appeal and was rendered harmless by proper jury instructions.

Affirmed.

---

References for Points in Headnotes

[1] 38 Am Jur 2d, Fright, Shock, and Mental Disturbance §§ 33, 34.
44 Am Jur 2d, Insurance §§ 1771-1773.
Insurer's liability for consequential or punitive damages for wrongful delay or refusal to make payments due under contracts. 47 ALR3d 314.
[2] 5 Am Jur 2d, Appeal and Error §§ 555, 556, 646.
58 Am Jur 2d, New Trial § 139 *et seq.*
[3] 31 Am Jur 2d, Expert and Opinion Evidence § 69.
75 Am Jur 2d, Trial § 75.
81 Am Jur 2d, Witnesses § 97.

1. Torts — Intentional Infliction of Emotional Distress — Insurance.

> The mere breach of an insurance contract is not sufficient to support a claim of intentional infliction of emotional distress; however, intentional conduct designed to frustrate a claimant's attempts to apply for benefits and define the limits of the policy may be considered to be extreme and outrageous and may support an action for intentional infliction of emotional distress.

2. New Trial — Weight of Evidence — Preserving Question.

> A claim that a verdict is against the great weight of the evidence must be raised in a motion for a new trial to be preserved for appellate review.

3. Witnesses — Expert Witnesses — Lawyers.

> It is error to allow lawyers to testify as expert witnesses for the purpose of establishing the legal sufficiency of a document and to interpret the law.

*Bush, Luce, Henderson, Bankson & Heyboer* (by *S. Keith Bankson),* for plaintiffs.

*Law Office of W. J. Drillock* (by *David W. Hearsch),* for defendant.

Before: T. M. Burns, P.J., and D. F. Walsh and C. W. Simon,* JJ.

Per Curiam. Defendant appeals as of right from a jury verdict awarding plaintiffs $360.36 in damages for breach of the no-fault insurance contract between defendant and plaintiffs, and $2,500 in damages for intentional infliction of emotional and mental distress. Defendant also appeals from the trial court's subsequent award of $5,880 in attorney fees based on defendant's unreasonable delay in paying plaintiffs the benefits they were due under the insurance contract.

Christine Rodzos, a 13-year-old girl, was injured

---

* Circuit judge, sitting on the Court of Appeals by assignment.

when the bicycle she was riding was struck by a motor vehicle. On the following day, April 21, 1979, her stepfather notified defendant's agent. The Roberts' vehicles were covered by a standard "no-fault" policy issued by defendant.

Plaintiffs' lawsuit alleging both breach of contract and intentional infliction of mental distress was premised on defendant's interference with plaintiffs' insurance claim for $440 of "replacement services". These services consisted of Delores Roberts' care for Christine after the accident. Mrs. Roberts had to wash Christine's hair to remove the blood, dress her, fix her meals and serve them to her in bed. Mrs. Roberts took a week off from work because of this increased burden. Mr. and Mrs. Roberts drove Christine to the doctor on four occasions.

Mr. Roberts heard nothing since he contacted defendant on April 21, 1979, so he retained an attorney in July, 1979. Plaintiffs' attorney sent defendant a letter informing it that Christine had severe facial injuries that would require further surgery. Defendant responded with an application for no-fault benefits. Defendant eventually paid the ambulance bill on August 31, 1979, after plaintiffs' attorney sent two requests. Along with this payment, defendant informed plaintiffs that it did not have a form for replacement services. Plaintiffs, with the assistance of their attorney, then prepared and submitted an "Affidavit Regarding Replacement Services", which requested replacement service benefits of $440. Defendant replied that most of the requested benefits would not be paid and that a doctor would have to verify the ones that would be paid. On March 10, 1980, plaintiffs finally filed their complaint against defendant.

At the conclusion of the trial, the jury returned a verdict agreeing that amounts were owed, and judgment was entered as follows:

"Judgment be and hereby is entered in favor of plaintiffs vs. defendant as follows:

| "A. | $360.36 | Unpaid benefits |
|-----|---------|-----------------|
| "B. | 57.96 | Section 3142(3) interest |
| "C. | 2,500.00 | Emotional distress |
| "D. | 5,880.00 | Section 3148 attorney fee |
| "E. | 425.00 | Taxable costs |
| "F. | 700.32 | MCL 600.6013 interest |

for a total judgment of nine thousand nine hundred twenty-three dollars and sixty-four cents ($9,923.64)."

On appeal, defendant raises several issues. We note, however, that in its motion for new trial defendant only contests the validity of the award for damages for mental distress. Defendant now argues that this award was contrary to the rule set forth in *Kewin v Massachusetts Mutual Life Ins Co,* 409 Mich 401, 423; 295 NW2d 50 (1980), where the Supreme Court found that the plaintiffs did not prove intentional infliction of emotional distress because they "alleged and proved no more than the failure of the defendant to discharge its obligations under the disability insurance contract". The essence of the *Kewin* decision is that the insurer is not liable for intentional infliction of emotional distress for merely failing to pay benefits allegedly due the insured.

This case involves significantly more than the mere failure to pay benefits. Plaintiffs' case is based upon allegations of defendant's intentional attempts to frustrate them from applying for benefits. Plaintiffs allege that defendant was informed of the nature and extent of Christine's injuries and

the costs of the services incurred therefrom but only supplied an application for a small portion of the payable benefits. Defendant claims that six years after the enactment of the no-fault statute it did not have application forms for the benefits plaintiffs requested under the act. This forced plaintiffs to procure counsel to apply for no-fault benefits. Considering the fact that defendant was informed that Christine had a severe facial scar that might necessitate plastic surgery, its conduct in frustrating plaintiffs' attempts to apply for benefits and define the limits of the policy could properly be considered as extreme and outrageous by a jury. *Frishett v State Farm Mutual Automobile Ins Co,* 3 Mich App 688, 692-693; 143 NW2d 612 (1966).

While the mere breach of an insurance contract has been held insufficient to support a claim for intentional infliction of emotional distress, *Kewin v Massachusetts Mutual Life Ins Co, supra; Butler v DAIIE,* 121 Mich App 727; 329 NW2d 781 (1982), the fact that one sells insurance does not create an immunity from this tort.

It is initially for the court to determine whether defendant's conduct may be reasonably regarded as so extreme and outrageous as to permit recovery. "Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." Restatement Torts, 2d, § 46, Comment h, p 77.

In this case, the issue of whether defendant's conduct is extreme and outrageous is an issue of fact. A determination of fact made by a jury should not be invaded upon by an appellate court if there is any credible evidence which the jury

might believe which would permit it to find for plaintiff. *Van Gilder v C E Trucking Corp,* 352 Mich 672, 675; 90 NW2d 828 (1958).

Considering the severe and personal nature of Christine's injuries suffered in the auto accident, defendant's overt attempts to frustrate plaintiffs from applying for benefits and then punishing them by failing to cooperate when they obtained counsel could reasonably be considered extreme and outrageous. The fact that Christine showed reluctance for plastic surgery may have been viewed by the jury as indicative of emotional damage caused by defendant's greed. The jury's verdict is supported by credible evidence and is not against the great weight of the evidence.

Defendant next argues that the jury erred in awarding replacement services. This argument is essentially that the jury's verdict is against the great weight of the evidence.[1] In its motion for new trial, defendant did not argue that this portion of the verdict was against the great weight of the evidence and, therefore, did not preserve this issue for appeal. *Burnett v Mackworth G Rees Inc,* 109 Mich App 547, 557-558; 311 NW2d 417 (1981); *Hill v Husky Briquetting, Inc,* 78 Mich App 452, 459; 260 NW2d 131 (1977), *lv den* 402 Mich 893 (1978) (a party waives its right to review of an objection by failing to raise the issue in a motion for new trial).

One of defendant's arguments deserves comment though. To some extent lawyers were used as expert witnesses to determine the legal sufficiency

---

[1] Defendant's final arguments pertain to the award for replacement services. Although some technical objections are raised in these arguments, defendant is clearly arguing that the verdict is against the great weight of the evidence. In fact, the last sentence of their argument is to this effect. The technical objections raised in these arguments were also not raised in the motion for new trial.

of a document and to interpret the law. Such a procedure is improper and should carefully be avoided. *Shields v Weller,* 270 Mich 7; 257 NW 765 (1934). If this issue were properly preserved for appeal, though, we would be inclined to find harmless error in this case since the judge properly instructed the jury on the law relating to the areas in which the lawyers testified.

Likewise, defendant's argument that evidence regarding the need for plastic surgery was irrelevant is without merit. Defendant's failure to discuss coverage of plastic surgery was clearly at issue as evidenced by its being mentioned at opening arguments without objection.

Affirmed.