SAWABINI v DESENBERG

Docket No. 75645. Submitted February 13, 1985, at Detroit.—Decided
June 3, 1985.

Plaintiff, George T. Sawabini, D.O., was named as one of several
defendants in a medical malpractice action which arose out of
the death of a patient following a long course of drug abuse.
His malpractice insurer retained Jon P. Desenberg and the law
firm of Moll, Desenberg, Bayer & Behrendt to represent plain-
tiff in the malpractice case. In the course of his representation
of plaintiff, defendant Desenberg obtained a copy of the testi-
mony of a defense witness in a Tennessee case in which the
witness indicated that it was proper for a physician to maintain
a known drug abuser on limited quantities of drugs. Desenberg
sent a letter regarding that testimony and an indication that
the drug-maintenance theory might be utilized as a defense to
plaintiff's insurer, to the nine other defense attorneys involved
in the case, to another doctor whom Desenberg was represent-
ing in a similar case, and to plaintiff. Plaintiff responded by
demanding a retraction of the letter and Desenberg's with-
drawal from the case. Desenberg withdrew and the insurer
assigned alternate counsel to the case. Plaintiff then brought
this action against Desenberg and the defendant law firm,
alleging libel, slander, defamation of character, invasion of
privacy, intentional or negligent infliction of emotional distress
and commercial disparagement (count I). Defendants moved for
summary judgment, which was denied, Wayne Circuit Court,

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 50 Am Jur 2d, Libel and Slander § 1 et seq.
Actionability of defamatory statements as to business conduct,
relating to a single transaction or occurrence. 51 ALR3d 1300.

[3] 62 Am Jur 2d, Privacy § 11 et seq.
Invasion of right to privacy by merely oral declarations. 19 ALR3d
1318.

[4] 38 Am Jur 2d, Fright, Shock, and Mental Disturbance § 1 et seq.
Modern status of intentional infliction of mental distress as inde-
pendent tort, "outrage." 38 ALR4th 998.

[5] 7 Am Jur 2d, Attorneys at Law § 197 et seq.
Allowance of punitive damages in action against attorney for
malpractice. 13 ALR4th 95.

Arthur M. Bowman, J. Plaintiff thereafter amended his pleading to include a count alleging legal malpractice (count II). Defendants' motion for summary judgment on that count was granted. All of the plaintiff's allegations were based upon Desenberg's sending of the letter, which plaintiff alleges was defamatory. Defendants appealed by leave granted from the denial of the summary judgment motion on count I and plaintiff cross-appealed by leave granted from the grant of summary judgment on count II. *Held:*

1. A trial court may determine, as a matter of law, whether the words of a communication are capable of carrying a defamatory meaning. Under the circumstances in which the letter was written, the letter was not intended to, and does not, reflect on the plaintiff's reputation. It could not reasonably have been perceived as defamatory. Thus, the trial court erred in not granting summary judgment on the claims of libel, slander, and defamation.

2. Plaintiff's complaint failed to state a viable cause of action for invasion of privacy as the plaintiff was not subjected to publicity by the letter.

3. Plaintiff failed, as a matter of law, to state a claim for intentional infliction of emotional distress.

4. The disparagement claim is without merit as it is based upon the allegedly defamatory letter, which the Court determined not to be defamatory.

5. Because the underlying medical malpractice action is still pending, plaintiff has suffered no harm. His complaint of legal malpractice was premature. Furthermore, plaintiff did not allege facts which would support his allegation that defendants breached the Code of Professional Responsibility by revealing a confidence. The trial court properly granted summary judgment on count II.

Reversed as to count I and remanded for entry of a summary judgment for defendants on that count. Affirmed as to count II.

1. LIBEL AND SLANDER — DEFAMATION.

The elements of a cause of action for defamation are (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

2. LIBEL AND SLANDER — DEFAMATION.

A court may determine as a matter of law whether words alleged to be defamatory are capable of carrying a defamatory mean-

ing; a communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him, considering the circumstances in which the language is used.

3. TORTS — INVASION OF PRIVACY — FALSE LIGHT.
   False light invasion of privacy is publicity which places a person in a false light in the public eye; an action alleging false light invasion of privacy requires allegations that the objectionable communication was broadcast to the public in general or to a large number of people.

4. TORTS — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.
   Recovery for intentional infliction of emotional distress requires that the defendant's conduct be so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.

5. ATTORNEY AND CLIENT — CODE OF PROFESSIONAL RESPONSIBILITY — LEGAL MALPRACTICE.
   There is a rebuttable presumption that violations of the Code of Professional Responsibility constitute actionable legal malpractice.

*Donald J. Morbach & Associates, P.C.* (by *Christopher E. Pencak*), for plaintiff.

*Collins, Einhorn & Farrell, P.C.* (by *Brian Einhorn* and *Noreen L. Slank*), for defendants.

Before: V. J. BRENNAN, P.J., and CYNAR and J. W. FITZGERALD,* JJ.

V. J. BRENNAN, P.J. Defendants, Jon P. Desenberg and the law firm of Moll, Desenberg, Bayer & Behrendt, appeal by leave granted on April 23, 1984, from a July 21, 1983, Wayne County Circuit Court order which denied defendants' motion for summary judgment as to count I of plaintiff's complaint. GCR 1963, 117.2(1); MCR 2.116(C)(8).

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment.

Plaintiff cross-appeals by leave granted on January 25, 1983, from an October 31, 1983, Wayne County Circuit Court order which granted defendants' motion for summary judgment as to count II of plaintiff's complaint. See above cited court rule.

Defendant Jon Desenberg and defendant law firm were retained by plaintiff's medical malpractice insurance carrier to represent plaintiff in a medical malpractice action filed in the Wayne County Circuit Court on or about June 25, 1982, by the Estate of Ophelia Williams. Nine physicians, including plaintiff, three pharmacies and a medical professional corporation were named as defendants in that action.

Defendant Jon Desenberg also represented Dr. Joel Friedland in a separate suit instituted by the Estate of Nedra Ruff. Plaintiff and Dr. Friedland were insured by the same medical malpractice carrier. Ms. Ruff's death followed a pattern of drug abuse similar to the pattern followed by Ms. Williams before her death. The problems of Ms. Ruff and Ms. Williams were featured in a Detroit News series. In the course of defendant Desenberg's representation of plaintiff and Friedland, defendant secured a copy of the testimony of Dr. Forrest S. Tennant, Jr., who had testified for the defense in the criminal action against the physician who had treated Elvis Presley *(State of Tennessee v George C Nichopoulas)*. Dr. Tennant testified that it was proper for a physician to maintain a known drug abuser on limited quantities of drugs.

On or about December 28, 1982, a letter[1] which

---

[1] The text of the letter:

"I have obtained the transcript of the testimony of Forrest S. Tennant, Jr., M.D., who has excellent credentials in the treatment of drug abuse and who testified as the defense expert in the case of *State of Tennessee v George C. Nichopoulous.* I enclose a copy of the transcript.

forms the basis of plaintiff's suit was forwarded to a claims adjuster for plaintiff's malpractice carrier. Copies of the letter were sent to the nine defense attorneys in the Ophelia Williams case. The attorneys were not members or associates of defendant law firm. Copies were also sent to plaintiff and to Dr. Friedland, who was not a party to the Ophelia Williams case.

On plaintiff's behalf, plaintiff's personal counsel sent a "retraction" letter to defendant Desenberg on or about January 7, 1983, in which, *inter alia,* a retraction and retrieval of the copies of Desenberg's letter were demanded within four days. Also demanded was Desenberg's withdrawal from the case. Defendant Desenberg withdrew from the case but did not retract his letter.

The medical malpractice insurance carrier assigned alternate counsel to defend plaintiff. On January 14, 1983, plaintiff filed the instant suit against defendant Desenberg and defendant law firm.

In count I of his complaint, plaintiff alleged that defendant Desenberg's conduct of his defense of plaintiff and publication of the letter created causes of action against defendants in libel, slander, defamation of character, invasion of privacy,

"The crux of Dr. Tennant's opinion is that it is perfectly acceptable, indeed commendable, to medically maintain known drug abusers on limited quantities of the drug(s) being abused; if in the judgment of the physician self-help (e.g. Narcotics Anonymous) or detoxification (e.g. withdrawal over a period of several weeks as a preface to self-help) will not be useful. See: Pages 16-30 of the transcript.

"If an expert such as Dr. Tennant is going to be helpful to us in these cases, the Defendant physicians are going to have to take the position that they knew or strongly suspected that the patients were long-time drug abusers who could not be successfully cured and, therefore, needed to be controlled as well as practicable. Based on our converstions with at least our insureds and the contents of their records, that might be a very legitimate position.

"At the very least, Dr. Tennant's testimony warrants a conference with him; and I will attempt to arrange one on my next trip to California which should be in the next 60 days."

intentional or negligent infliction of emotional distress and commercial disparagement. Plaintiff alleged that defendants "did prepare, disseminate, distribute and publish a letter * * * false and defamatory statements and innuendos intended to mean that plaintiff was guilty of professional medical malpractice, impropriety and/or criminal behavior which recipients of said letter understood them to have this meaning." On or about April 12, 1983, defendants filed a motion for summary judgment.

After oral argument on April 29, 1983, the trial court denied defendants' motion for summary judgment without prejudice. An order denying defendants' motion for summary judgment was entered on July 21, 1983.

On or about May 10, 1983, plaintiff filed a motion to amend his complaint to state a legal malpractice claim. After a hearing held in June, 1983, by order dated July 15, 1983, the trial court granted plaintiff's motion to amend. Plaintiff alleged that defendant Desenberg's act of preparing the letter and circulating it to codefendant's counsel, to the insurance carrier, and to Dr. Friedland violated numerous "ethical standards of care". Plaintiff also alleged *inter alia* that defendants mishandled the defense investigation in the underlying malpractice action.

On or about July 29, 1983, defendants filed a motion for partial summary judgment as to count II of plaintiff's complaint. After a hearing held on October 17, 1983, defendants' motion was granted by order entered October 24, 1983.

Defendants first argue that the trial court erred in denying them summary judgment on count I of plaintiff's complaint.

Plaintiff's complaint alleges that he was de-

famed by the letter[2] which defendant wrote to plaintiff's medical malpractice insurer with copies sent to other attorneys representing defendant's codefendants in the medical malpractice action and another doctor whom defendant was representing in a similar case.

The elements of a cause of action for defamation are: "(a) a false and defamatory statement concerning plaintiff; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by the publication (defamation *per quod)". Postill v Booth Newspapers, Inc,* 118 Mich App 608, 618; 325 NW2d 511 (1982), *lv den* 417 Mich 1050 (1983), citing Restatement Torts, 2d, § 558; *Curtis v Evening News Association,* 135 Mich App 101, 103; 352 NW2d 355 (1984); *Ledl v Quik Pik Food Stores, Inc,* 133 Mich App 583; 349 NW2d 529 (1984).

The court may determine, as a matter of law, whether the words in question, alleged by plaintiff to be defamatory, are capable of defamatory meaning. See, *e.g., Ledsinger v Burmeister,* 114 Mich App 12, 21; 318 NW2d 558 (1982). Where the words are, as a matter of law, not capable of carrying a defamatory meaning, summary judgment under GCR 1963, 117.2(1) is appropriate. See *Lins v Evening News Association,* 129 Mich App 419, 422; 342 NW2d 573 (1983).

"A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. *Nuyen v Slater,* 372 Mich 654, 662, fn; 127 NW2d

2 See Footnote 1.

369 (1964); *Ledsinger v Burmeister,* 114 Mich App 12, 21; 318 NW2d 558 (1982)." *Swenson-Davis v Martel,* 135 Mich App 632, 635-636; 354 NW2d 288 (1984), *lv den* 419 Mich 946 (1984). In assessing whether language is defamatory, the circumstances should be considered. *Ledsinger v Burmeister, supra.*

Under the circumstances here, in our opinion, defendant's letter could not reasonably be perceived as carrying a defamatory meaning. The attorney's letter was directed to plaintiff's malpractice insurer (with copies to codefendants' attorneys and another doctor insured by the same malpractice insurer and represented by defendant in a similar case). Reading the letter as a whole, it clearly was designed to communicate a novel defense theory being explored which might have application in the case. The letter, examined in light of the circumstances in which it was written, was not intended to, nor does it, reflect on plaintiff's reputation. Given the limited audience for the letter and the tone of and purpose for the letter, we do not believe it could reasonably have been perceived as defamatory. Thus, in our opinion, the lower court should have granted summary judgment to defendants on plaintiff's defamation, libel, and slander claims.

We also find that plaintiff's complaint failed to state a viable cause of action for either invasion of privacy or intentional infliction of emotional distress. In his complaint, plaintiff alleged that the defamatory letter written by defendant Desenberg "put plaintiff in a false light by publishing and disseminating certain false, and incorrect statements and innuendos regarding plaintiff's professional and personal conduct".

False light invasion of privacy is described in *Ledl v Quik Pik Stores, supra,* as:

" '[p]ublicity which places plaintiff in a false light in the public eye'. *Beaumont v Brown,* 401 Mich 80, 95, fn 10; 257 NW2d 522 (1977). In discussing what was necessary to state a cause of action for invasion of privacy, this Court stated in *Reed v Pontin,* 15 Mich App 423, 426; 166 NW2d 629 (1968):

" 'When there has been no misappropriated use of, or physical intrusion into, the private life, employment, property, name, likeness, or other personal place or interest, so that the privacy action is premised solely upon a disclosure of secret or confidential matter or upon being put *publicly* in a "false light", then if (without deciding) mere words of mouth can never be actionable (except by a slander action) the oral communication must be broadcast to the public in general or publicized to a large number of people.' " 133 Mich App 591-592.

Plaintiff alleged neither that the defendant's opinion on a possible defense was broadcast to the public in general or to a large number of people nor that the plaintiff was given unreasonable and highly objectionable publicity that attributed to him characteristics, conduct or beliefs that were false and placed him in a false position. See Restatement Torts, 2d, § 652 E, comment b. False light invasion of privacy, or "Publicity Placing Person in False Light", Restatement Torts, 2d, § 652 E,[3] is limited to situations where the plaintiff is given publicity. See Restatement Torts, 2d, § 652 E, comment a. Furthermore, comment b to § 652 E, p 395, explains that:

---

[3] Restatement Torts, 2d, § 652 E states:

"Publicity Placing Person in False Light

"One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if

"(a) the false light in which the other was placed would be highly offensive to a reasonable person, and

"(b) the actor had knowldge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

"The interest protected by this section is the interest of the individual in not being made to appear before the public in an objectionable false light or false position, or in other words, otherwise than as he is. In many cases to which the rule stated here applies, the publicity given to the plaintiff is defamatory, so that he would have an action for libel or slander * * *. In such a case the action for invasion of privacy will afford an alternative or additional remedy, and the plaintiff can proceed upon either theory, or both, although he can have but one recovery for a single instance of publicity.

"It is not, however, necessary to the action for invasion of privacy that the plaintiff be defamed. It is enough that he is given unreasonable and highly objectionable publicity that attributes to him characteristics, conduct or beliefs that are false, and so is placed before the public in a false position. When this is the case and the matter attributed to the plaintiff is not defamatory, the rule here stated affords a different remedy, not available in an action for defamation."

Although the letter was not defamatory, plaintiff's theory of recovery for invasion of privacy is not actionable. Similarly, plaintiff has also failed to state a claim for intentional infliction of emotional distress based upon the statements in the letter and defendant's decision to send the letter to an extremely limited audience.

Extreme and outrageous conduct is required to recover for the tort of intentional infliction of emotional distress, which is explained by this Court in *Ledl v Quik Pik Food Stores, supra:*

"The 'extreme and outrageous conduct' requirement was stated in *Ledsinger v Burmeister,* 114 Mich App 12, 18; 318 NW2d 558 (1982), in the following quotations from § 46, comment d, p 73 of the Restatement:

" 'Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable

in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to scream, "Outrageous!" ' " 133 Mich App 591. Accord, *Swenson-Davis v Martel, supra,* p 639.

It is initially for the trial judge to decide whether defendant's conduct might reasonably be regarded as so extreme and outrageous as to allow recovery for intentional infliction of emotional distress. *Roberts v Auto-Owners Ins Co,* 135 Mich App 595; 354 NW2d 271 (1983). In making the determination, the court should consider the circumstances involved. *Rosenberg v Rosenberg Brothers Special Account,* 134 Mich App 342; 351 NW2d 563 (1984).

In the present case, the allegations contained in plaintiff's complaint, accepted as true, do not indicate any behavior by defendants which even arguably could be viewed as intentional infliction of emotional distress under the threshold standard. All plaintiff alleges is that defendant Desenberg, while representing him, wrote a letter to plaintiff's malpractice insurer, with carbon copies to other attorneys representing plaintiff's codefendants and another doctor involved in a similar suit. Under the circumstances, defendants' conduct could not be considered extreme or outrageous. Accordingly, the trial court should have determined, as a matter of law, that plaintiff failed to state a claim for intentional infliction of emotional distress, and it should have granted summary judgment for defendants under GCR 1963, 117.2(1) on the claims of defamation, invasion of privacy and intentional infliction of emotional distress.

Although this Court does recognize an injurious falsehood tort action, and the tort of defamation may in some cases overlap, see *Kollenberg v Rami-*

*rez,* 127 Mich App 345; 339 NW2d 176 (1983) (where the torts overlap, as long as damages do not overlap, the plaintiff may bring suit for both torts), it is our opinion that plaintiff's cause of action entitled "disparagement" also fails because it is based solely on the allegedly defamatory letter which we have already determined not to be defamatory.

Therefore, we reverse the trial court's order denying summary judgment to defendants on all the claims contained in count I of plaintiff's complaint and remand to the trial court for entry of judgment in favor of defendants.

Plaintiff argues on cross-appeal that the trial court erred in granting summary judgment to defendants on count II of plaintiff's complaint which alleged legal malpractice. We disagree.

Plaintiff's allegations of legal malpractice focus on Desenberg's allegedly defamatory letter and defendants' failure to properly investigate both the ramifications of the possible defense strategy raised in the letter and the nature of the charges against plaintiff in the underlying Williams case. Plaintiff also claimed that defendants breached professional ethics in their representation of plaintiff.

In as much as the Williams litigation is still pending, defendants correctly observe that plaintiff has sustained no appreciable or actual harm at this time as a result of any act by defendant Desenberg, even assuming *arguendo* that professional negligence has been alleged in the complaint. Therefore, the plaintiff's complaint was brought prematurely and it was properly dismissed. See *Luick v Rademacher,* 129 Mich App 803; 342 NW2d 617 (1983); *Cassidy v Wisti,* 43 Mich App 356; 204 NW2d 252 (1972).

In his brief on appeal, plaintiff cites various

portions of the Code of Professional Responsibility that defendants allegedly breached in their representation of plaintiff. From plaintiff's complaint, it appears that plaintiff alleged without designation as such that defendants breached Disciplinary Rule 4-101 which discusses the principal of confidentiality. There is a rebuttable presumption that violations of the code consititute actionable malpractice. *Lipton v Boesky,* 110 Mich App 589; 313 NW2d 151 (1981).

Plaintiff has not alleged facts bringing the instant case within the theory of a breach of confidentiality. Nowhere in the letter did Mr. Desenberg reveal a confidence or secret of his client. At most, Desenberg suggested that, based on his conversations with the two doctors and the contents of their records, one legitimate defense strategy might be the maintenance theory advocated by Dr. Tennant. Since inconsistent positions are permitted in civil litigation, MCR 2.111(A)(2), it is by no means a concession of professional impropriety on plaintiff's behalf that counsel would contemplate, advocate, or pursue such a defense.

A fair reading of the complaint filed against plaintiff doctor, which is a matter of public record for anyone to view, required defendants to defend the plaintiff against scathing allegations of medical malpractice.[4] Our reading of the complaint clearly shows that the letter complained of here was a proper inquiry by defendants herein for the

[4] We take judicial notice of the fact that before the malpractice claims against plaintiff and other physicians and pharmacists were filed, there appeared in the Detroit News, beginning on June 21, 1982, a very thorough and exhaustive exposé-type of series of articles relating to the sordid details leading to the drug related deaths of Ophelia Williams and other individuals.

Frequent references were made throughout the articles to plaintiff's name and his alleged illicit treatment of Ms. Williams. We only point out this story in light of the present cause of action commenced by plaintiff against defendants.

preparation of plaintiff's defense. For example, without reproducing the entire complaint, the following are claims of alleged medical malpractice against the plaintiff herein:

"20. That notwithstanding the aforesaid duties, the defendants, treated the plaintiffs' decedent in a negligent fashion, not in accord with the standard of care, so that said Ophelia Williams became and remained addicted to certain drugs which led to her death, and damage to the plaintiffs as hereinafter stated.

"21. That the defendants, by and through their agents and employees were then and there guilty of one or more of the following negligent acts or omissions:

"a) failure to properly treat plaintiffs' decedent's physical condition;

"b) failure to provide continuing care and treatment for plaintiffs' decedent;

"c) failure to diagnose plaintiffs' decedent's condition;

"d) indiscriminately prescribing harmful and addictive drugs, including, but not limited to Soma, Talwin, Librium, Valium, Elavil, Triavil, Ornade Span, Empirin with Codeine and PBZ;

"e) failure to supervise the administration of addictive drugs;

"f) failure to warn plaintiffs' decedent of the dangers of said drugs;

"g) failure to change the method of treatment when defendants knew, or in the exercise of reasonable care should have known, that plaintiffs' decedent was becoming addicted to the prescribed drugs.

"22. That as a direct and proximate result of the negligence of the defendant doctors and each of them, plaintiffs' decedent became totally dependent and addicted to said drugs, and said addiction caused her wrongful and untimely death."

Plaintiff has not established that any conversation referred to in the letter was subject to the attorney-client privilege, as apparently third per-

sons were either present, or, alternatively, the conversations were with agents of the plaintiff's insurer to which no privilege would attach, the company's agents not being licensed attorneys.

Again, our review of plaintiff's pleadings, as compared to plaintiff's elaboration of the allegations in his complaint on appeal, reveals that the alleged violation of the code provisions referred to in plaintiff's brief does not apply to the facts presented here.

The trial court correctly granted summary judgment on count II.

Reversed in part and remanded for entry of summary judgment for defendants on count I.

Affirmed as to dismissal of count II.

We retain no further jurisdiction.